Lloyd DUNCAN, Petitioner–Appellant,

v.

STATE OF ALABAMA; Freddie Smith, Director of the Department of Corrections for the State of Alabama, Respondents–Appellees.

No. 88–7708.

United States Court of Appeals, Eleventh Circuit.

Aug. 24, 1989.

James L. O'Kelley, Arendall & O'Kelley, Birmingham, Ala., for petitioner-appellant.

Don Siegelman, Atty. Gen., Thomas R. Allison, Asst. Atty. Gen., James B. Prude, Asst. Attys. Gen., Montgomery, Ala., for respondents-appellees.

Before CLARK and EDMONDSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

CLARK, Circuit Judge:

Lloyd Duncan, an Alabama prisoner, appeals from the district court's denial of his petition for writ of habeas corpus. Duncan argues that his constitutional rights were violated because his trial counsel were laboring under a conflict of interest. After the district court initially denied the petition, we remanded for an evidentiary hearing. After a hearing, the district court again denied the petition finding that there was no actual conflict of interest and that even if a conflict existed, Duncan waived his right to conflict-free counsel. Duncan appealed and we affirm finding that he knowingly and intelligently waived his right to conflict-free counsel.

## I. FACTS

Duncan was convicted of the murder of Eva and Eric Sims. In 1977, Duncan was convicted in Marshall County Circuit Court of raping Eva Sims and was sentenced to ten years imprisonment. He was paroled in January 1980 after serving less than two years. On February 13, 1980, about a month after his release on parole, Duncan went to the mobile home in which Eva Sims lived with her two sons, Neal aged nine and Eric aged four. After watching Sims and a visitor through the window, Duncan went to his home and retrieved a loaded .22 caliber rifle. He returned to Sims' home, hid his car, and cut the telephone lines. He then broke into the mobile home through a window and began shooting his rifle, killing Sims and Eric; Neal was severely injured but recovered. At some point, Sims shot and wounded Duncan.

After emptying his rifle, Duncan turned on the lights in the mobile home and realized that he had shot the two boys. He wrapped Neal in a quilt and told him he would go get help. Duncan then drove back to his home and told his parents to call for an ambulance to be sent to the Sims' home. He then turned himself into the police. Duncan freely confessed but maintained that he had not intended to kill Sims, but rather that he wanted to scare her. He also vehemently denied knowing that the two boys were in the mobile home.[1] These statements were admitted into evidence at trial.

Duncan was arrested on February 14, 1980. He was subsequently indicted and arraigned on three separate sets of indictments.[2] The final indictment on which he

1. The testimony at trial established that the two boys were not at the mobile home when Duncan first spied on Sims. They returned during the time Duncan was retrieving his rifle.

2. The three sets of indictments seem to have been caused by the confusion over the Alabama death penalty statute after Beck v. Alabama, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980). First Duncan was charged in three separate indictments for capital murder for the death of Eva Sims (No. 80–200086), Eric Sims (No. 80–200087) and assault of Neal Sims. (No. 80–200088). The first two indictments alleged capital murder under Section 13A–5–31(a)(4) which made an intentional murder during a nighttime burglary of a dwelling a capital crime. After Beck, the grand jury returned two new indictments charging Duncan with the lesser included offense of intentional murder in violation of

was tried alleged two counts: Count I charged Duncan with capital murder as defined under Alabama Code § 13A–5–31(a)(4) for intentionally killing Eva Sims during a nighttime burglary and Count II charged him with capital murder under Alabama Code § 13A–5–31(a)(10) for intentionally killing Eva and Eric Sims. Duncan was convicted on both counts. After a sentencing hearing, the jury refused to impose the death penalty. The trial judge therefore imposed two consecutive terms of life imprisonment without possibility of parole. On appeal, the Alabama Supreme Court affirmed the conviction on Count I of the indictment but vacated the conviction and sentence under Count II of the indictment. *Duncan v. State*, 436 So.2d 883, 905 (Ala.Crim.App.1983), *cert. denied*, 464 U.S. 1047, 104 S.Ct. 720, 79 L.Ed.2d 182 (1984).

On May 13, 1980, the trial judge appointed T.J. Carnes and William Gullahorn to represent Duncan. Both attorneys made the trial court aware that they had potential conflicts of interest in representing the defendant. Carnes informed the court that his son and law partner had been representing Eva Sims at the time of her death in her efforts to stop Duncan from harassing her. Gullahorn informed the court that he had previously represented the District Attorney who was trying the case in a divorce action and that he might advise him in relation to the possibility of future litigation. After discussing the conflicts with his attorneys, the defendant was unable to make a decision about whether to accept Carnes and Gullahorn as his counsel. The trial judge therefore allowed him to think about it overnight and apparently asked another lawyer, Marion Lusk, to confer with Duncan.[3] The next day, Duncan accepted the appointment of counsel.

Because Duncan was reindicted and rearraigned two more times, the conflict issue

was raised at each arraignment.[4] At the arraignment on the second indictment, the matter was summarily raised but counsel were reappointed. Finally, at the third arraignment on February 3, 1981, the district attorney requested that the court inquire into the conflict issue. The attorneys reiterated the facts underlying their conflicts. Carnes stated that he was not privy to any confidential information from the deceased. He also informed the court that he could think of nothing he would refrain from doing on behalf of Duncan because of his firm's prior representation of the victim. Gullahorn agreed that he did not foresee his relationship with the district attorney impeding his defense of Duncan. The trial judge then requested another attorney, W.D. Wilkes, to discuss the conflict issue with Duncan. After a brief recess, the trial judge questioned both Wilkes and Duncan and determined that the defendant accepted the appointment of Carnes and Gullahorn.

Duncan raised the issue of the conflict of interest on direct appeal after his conviction. The Alabama Court of Criminal Appeals held that "[t]here can be no question that both Mr. Carnes and Mr. Gullahorn had actual conflicts of interest, which, without a waiver by appellant, would have prevented constitutionally adequate representation." 436 So.2d at 897. The Court went on to find, however, that Duncan had made a valid waiver of his right to conflict-free counsel under the standards of *Zuck v. Alabama*, 588 F.2d 436, 440 (5th Cir.1975), *cert. denied*, 444 U.S. 833, 100 S.Ct. 63, 62 L.Ed.2d 42 (1979).

Duncan then filed a petition for writ of habeas corpus in the federal district court. The magistrate recommended granting the writ because Gullahorn and Carnes had actual conflicts of interest and Duncan had not validly waived his right to conflict-free representation. After a de novo review,

Alabama Code Section 13A–6–2. (Nos. 80–200202 & 80–200203). The indictment Duncan was finally tried and convicted under alleged in separate counts murder committed during a nighttime burglary and intentional murder. The remaining indictments were dismissed.

**3.** Lusk never appeared in the state court.

**4.** The actual arraignment on the first set of indictments did not occur until June 3, 1980. At that time, the trial judge denied defense counsel's motion to withdraw based on the defendant's failure to cooperate with them.

the district court rejected the magistrate's recommendation and held that Duncan had validly waived his right to conflict-free counsel and that even if the waiver was invalid, he was not entitled to relief because there was no showing that the conflicts adversely affected the attorneys' performance.

This court, in an unpublished opinion, found the record insufficient to determine whether the conflicts adversely affected the attorneys' performance or whether Duncan validly waived his right to conflict-free counsel. On remand, the magistrate conducted an evidentiary hearing at which Carnes, Gullahorn, Duncan and Wilkes testified. Gullahorn testified that he failed to press the district attorney about a misunderstanding of a proposed plea agreement because of his relationship with the district attorney. Carnes also testified that the conflicts made Duncan suspicious and distrustful of them. Duncan then testified that he was never fully informed of the conflicts under which his attorneys were laboring and the disadvantages to representation by these attorneys. This testimony was contradicted by the testimony of Wilkes who stated that he explained the conflicts to the defendant, the consequences of these potential conflicts, and that he had a right to other appointed attorneys. After hearing this testimony, the magistrate determined that the attorneys did not have actual conflicts that adversely affected their representation and alternatively that Duncan had validly waived his right to conflict-free counsel. The district court adopted the magistrate's report and recommendation and denied the petition.

On appeal, Duncan argues that his attorneys did have an actual conflict which adversely affected their performance. He argues that the evidence at the hearing established that the conflict affected counsel's representation in two ways: first, counsel refrained from pursuing the District Attorney's misrepresentation of the plea agreement and second, Duncan never trusted his attorneys because of the conflict and therefore never fully cooperated with them. Finally, he argues that the magistrate erred in finding that he validly waived his right to conflict-free counsel.

## II. DISCUSSION

The sixth amendment assures a criminal defendant the right to effective assistance of counsel which includes the right to counsel who is unimpaired by conflicting loyalties. The Supreme Court has acknowledged that "counsel owes the client a duty of loyalty, a duty to avoid conflicts of interest," which is "perhaps the most basic of counsel's duties." *Strickland v. Washington*, 466 U.S. 668, 690, 692, 104 S.Ct. 2052, 2065, 2067, 80 L.Ed.2d 674 (1984). The Court has recognized that the harm caused by representing conflicting interests is difficult to measure because the harm "is in what the advocate finds himself compelled to *refrain* from doing, not only at trial but also as to possible pretrial plea negotiations and in the sentencing process." *Holloway v. Arkansas*, 435 U.S. 475, 490, 98 S.Ct. 1173, 1182, 55 L.Ed.2d 426 (1978); *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). Therefore when an attorney labors under an actual conflict of interest, the defendant need not show prejudice in order to obtain a reversal of his conviction. *Burger v. Kemp*, 483 U.S. 776, 783, 107 S.Ct. 3114, 3120, 97 L.Ed.2d 638 (1987); *Cuyler v. Sullivan*, 446 U.S. 335, 347, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980); *Holloway*, 435 U.S. at 489, 98 S.Ct. at 1181; *see Glasser*, 315 U.S. at 75–76, 62 S.Ct. at 467 ("the right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial.").

In *Holloway v. Arkansas*, the Supreme Court held that it was reversible error for a trial judge not to inquire into a potential conflict of interest when alerted to the possibility by trial counsel. *Id.* at 478–81, 98 S.Ct. at 1175–77. The public defender, who was appointed to represent three codefendants, filed a motion for appointment of separate counsel based on a conflict of interest that was denied without any inquiry into the basis of the motion. In

reversing Holloway's conviction, the Supreme Court held that the trial judge erred by failing "either to appoint separate counsel or to take adequate steps to ascertain whether the risk was too remote to warrant separate counsel." *Id.* at 484, 98 S.Ct. at 1178. The Court held that "this failure in the face of the representations made by counsel weeks before trial and again before the jury was empaneled, deprived petitioner of the guarantee of 'assistance of counsel.'" *Id.*, 98 S.Ct. at 1179.

 Unlike *Holloway*, in this case the trial judge inquired into the allegations of potential conflict and procured a waiver from the defendant of his right to counsel free of these conflicts. This court has held that a defendant may waive the right to conflict-free counsel as long as the waiver is knowingly and intelligently made. *Zuck v. Alabama*, 588 F.2d 436, 440 (5th Cir.), *cert. denied*, 444 U.S. 833, 100 S.Ct. 63, 62 L.Ed.2d 42 (1979). To be knowing and intelligent, the defendant must be told (1) that a conflict of interest exists; (2) the consequences to his defense from continuing with conflict-laden counsel; and (3) that he has a right to obtain other counsel. *Id.; see Gray v. Estelle*, 616 F.2d 801, 804 (5th Cir.1980); *United States v. Garcia*, 517 F.2d 272, 276 (5th Cir.1975). We conclude that Duncan validly waived his right to conflict-free counsel.[5]

Duncan concedes that he was aware of his right to have other counsel appointed. Appellant's Brief at 25.[6] Instead, he argues that his waiver was invalid because he was not informed of the specific facts about the conflicts and the possible consequences to his defense. The record refutes this contention. On at least two occasions, both Carnes and Gullahorn fully explained the nature of their conflicts on the record; Duncan was present on both occasions. At the first arraignment, Carnes stated "my son, Jimmy Carnes, who is a member of my firm, informed me that he had represented the deceased in several matters involving the defendant and was in the process of representing her at the time of her death in a matter pending between them." Resp. Exh.D., Vol. 1, May 1980 hearing at 3. At the third arraignment, Carnes stated that "it's my understanding that at the time of her death my firm was actively representing her in regard to her relationship with Mr. Lloyd Duncan." *Id.*, February 1981 hearing at 7. Gullahorn also specified the nature of his conflicting interests. He informed the court both at the first and third arraignment that he had represented the district attorney in his prior divorce action and that there was a possibility that he would counsel the district attorney about future litigation. *Id.*, May 1980 hearing at 4–8, February 1981 hearing at 10–11. This evidence alone supports a finding that Duncan understood the facts underlying the conflicts which Carnes and Gullahorn faced.

In addition, the trial judge specifically requested that counsel discuss the conflicts with Duncan. Moreover, at the first and third arraignment, the judge appointed independent attorneys to discuss the problem with Duncan, Lusk and Wilkes. The

---

5. The magistrate analyzed the case under the standard enunciated in *Cuyler v. Sullivan* for proving that a conflict of interest deprived the defendant of effective assistance of counsel. The *Cuyler* standard requires a showing that counsel's active representation of conflicting interests adversely affected counsel's performance. 446 U.S. at 348, 100 S.Ct. at 1718. Since we determine that Duncan's waiver was valid, we do not address whether Carnes' or Gullahorn's conflicts ever became "actual conflicts" as defined by *Cuyler*. We also do not determine whether a defendant must satisfy the *Cuyler* standard to obtain reversal of his conviction if the trial judge refused to inquire into the possibility of conflict after an objection. *E.g., Holloway*, 435 U.S. at 484, 98 S.Ct. at 1178. The opinion in *Cuyler* is specifically limited to cases where the issue was not raised at trial. 446 U.S. at 348, 100 S.Ct. at 1718 ("a defendant who objects to multiple representation must have the opportunity to show that potential conflicts impermissibly imperil his right to a fair trial. *But unless the trial court fails to afford such an opportunity*, a reviewing court cannot presume that the possibility for conflict has resulted in ineffective assistance of counsel.") (emphasis added).

6. Even without this concession, it is clear from the record that the trial court informed the defendant that if he did not agree to the appointment of Carnes and Gullahorn, other counsel would be appointed or he could hire another lawyer.

**1018**

record does not reflect the substance of the discussions Duncan had with Carnes, Gullahorn, or Lusk. At the evidentiary hearing, neither Carnes nor Gullahorn could remember specifically what they discussed with Duncan. Lusk never appeared in the state court record and was deceased at the time of the evidentiary hearing. Duncan testified at the evidentiary hearing that none of these individuals discussed the nature of the conflicts or their possible effect on his defense. Instead, he testified that both Lusk and Wilkes merely told him that he could not get better lawyers than Carnes and Gullahorn. Record, Vol. 2 at 102–07. This testimony was directly contradicted by Wilkes. At the evidentiary hearing, Wilkes testified that he spoke with Duncan for thirty to forty-five minutes and discussed the specifics of the conflict and the potential effect on Duncan's defense. *Id.* at 124–27. The magistrate credited Wilkes' testimony and determined that Duncan had knowingly and intelligently waived his right to conflict-free counsel. We must accept the findings of facts especially when dependent on the credibility determinations unless they are clearly erroneous. Fed.R. Civ.P. 52(a) ("Findings of fact, ..., shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses."); *see Amadeo v. Zant,* 486 U.S. 214, ——, 108 S.Ct. 1771, 1777, 100 L.Ed.2d 249 (1988); *Anderson v. Bessemer City,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). In the face of an ambiguous state court record and the testimony at the evidentiary hearing, we cannot say that the magistrate was clearly erroneous in crediting Wilkes' version of the conversation. Thus, we conclude that Duncan was fully apprised of the nature of the potential conflicts under which his attorneys labored and the possible effect it could have on his defense. Duncan therefore validly waived his right to conflict-free counsel. We AFFIRM the district court order denying the petition for writ of habeas corpus.

AFFIRMED.