Henry HAMILTON, Petitioner–
Appellant,

v.

Paul FORD, Warden, Jack T. Rutledge
Correctional Institute, Respondent–
Appellee

No. 90–8023.

United States Court of Appeals,
Eleventh Circuit.

Aug. 21, 1992.

Glen M. Darbyshire, Hunter Maclean Exley & Dunn, PC, Savannah, Ga., for petitioner-appellant.

Henry Hamilton, pro se.

Dennis Robert Dunn, Office of State Atty., Paula K. Smith, Asst. Atty. Gen., Atlanta, Ga., for respondent-appellee.

Before BIRCH, Circuit Judge, JOHNSON * and BOWNES **, Senior Circuit Judges.

BOWNES, Senior Circuit Judge.

This is an appeal from a denial of a writ of habeas corpus from the United States District Court for the Northern District of Georgia. Petitioner Henry Hamilton claims ineffective assistance of counsel as well various trial errors. Because we find that petitioner received ineffective assistance of counsel, we conditionally grant petitioner's writ.

### Background

Hamilton was arrested and subsequently indicted in Georgia state court for the murder of Stephen Hynes, which occurred on May 28, 1983. Hynes was murdered during an attempted robbery.[1] The indictment

---

\* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

\*\* Honorable Hugh H. Bownes, Senior U.S. Circuit Judge for the First Circuit, sitting by designation.

1. The Supreme Court of Georgia on direct review of Hamilton's appeal found the following facts:

On the evening of May 28, 1983, the victim and his fiancee, Catherine Moore, were preparing to have dinner on the sidewalk outside her apartment door which she used as a patio, the couple having been talking and drinking beer and champagne there for about 45 minutes. Catherine testified that, when she heard a "soft, creeping sound," she turned to see a male crouching down with a silver revolver,

charged petitioner and co-defendant Michael Fortson with one count of malice murder and two counts of attempted robbery of Hynes and his fiance, Catherine Moore. The indictment listed twenty-three witnesses.

Both Hamilton and Fortson, Hamilton's cousin, were represented during pretrial motions by one attorney. On September 13, 1983, counsel moved to sever the trials of the two co-defendants. Defense counsel also filed several motions to obtain the evidence against his clients. These motions included a request for a copy of the indictment, a request for a list of witnesses, a request to compel discovery, and a request for a commitment hearing.

During a pretrial hearing on October 17, 1983, the court denied defendants' motion for severance. It also ordered the prosecution to provide the defense with a list of witnesses and their addresses, setting a deadline of October 28. Finally, the court set a date of November 14 as the first day of trial. In a letter dated October 21, the prosecutor produced a list of 144 potential witnesses with incomplete addresses. The weekend prior to trial, the prosecution provided the defense with a list of the witnesses who would actually testify at trial.

On November 14, 1983, the first day of trial, defense counsel renewed his request for severance, or in the alternative, appointment of separate counsel to represent one of the defendants. Counsel explained that investigation over the preceding weekend had led him to believe that he could not effectively represent both defendants because they had conflicting interests. The prosecutor objected, noting that in a previ-

ous pretrial hearing the defendants had indicated that they understood the ramifications of joint representation.

Defendants' counsel replied that when defendants allegedly consented to joint representation three months prior to trial, it was unclear what the ramifications of joint representation would be. He observed that new information had been discovered up to and including the weekend prior to trial. He further added that he believed that it would be a miscarriage of justice for the men to be jointly represented. The court asked counsel whether the defense would consist of placing defendants in different places at the same time. Counsel answered in the affirmative. The court then commented that "it gets kind of complicated for a trial judge when he is charged with the efficiency of his office as well as the sanctity of his office." Counsel then repeated that the motion for separate counsel was not intended as a delaying tactic. The court denied the motion for severance and for separate counsel and the case went to trial.

The bulk of the evidence at trial consisted of Moore's testimony and that of several victims of "similar transactions"—involving armed robberies. Moore was able to identify both Hamilton and Fortson as being involved in the murder of Hynes, although she did not testify as to whether both or only one actually shot her fiance. The various victims of "similar transactions," with varying degrees of certainty, identified one or both of the defendants as having robbed them. Though the trial court termed these robberies "similar transactions," the testimony indicated that

who stated, "Don't look at me; don't look at me." He then said, "You can come on down, buddy," whereupon a second male emerged from the bushes in a few seconds. Stephen and Catherine stood up when the armed intruder gave instructions that "we are going to enter the apartment now." Stephen held Catherine's arm, and they ran for about 10 yards, at which time two or three gunshots were fired, and they both fell. Catherine testified that she got up and, when she looked back, saw the assailant shoot her fiance who was facing him.

There was evidence that appellant Fortson sustained gunshot injuries to his leg, which he

explained to a witness as having happened accidentally while appellant Hamilton was shooting victim Hynes. Expert testimony confirmed other evidence that the victim was killed by a .38 caliber bullet entering the chest from the rear. Another bullet recovered from the victim's body was also a .38 caliber, but had been fired from a different revolver. Identification of the appellants as the assailants was made by Miss Moore from a police lineup, as well as from a hat and samples of hair, blood and saliva from the crime scene. *Hamilton v. State*, 255 Ga. 468, 468–69, 339 S.E.2d 707 (1986).

in some of the robberies only one individual was involved.

The prosecution also placed into the evidence the testimony of Calvin Fletcher, Gwendolyn Cates, and James Tate. Fletcher testified that at a party defendant Fortson told him that Hamilton had shot Hynes and in the process had accidentally shot him as well. No objection was made during the testimony. Cates testified that she was at the same party and saw Michael's injured leg. She also attempted to testify to the effect that Yolanda Cudger, Fortson's niece, had stated that Fortson was injured as a result of the Hynes killing. Defense counsel objected on grounds of hearsay and the objection was sustained. Finally, Tate also testified as being present at the party and observing Fortson's injury. He, too, testified that Cudger had explained that Fortson's injury had been the result of the attempted robbery of Hynes.

After the testimony of Fletcher, Cates, and Tate, defendants' counsel renewed his motion for separate counsel. He explained that to represent Hamilton properly, he needed to cross-examine Fortson about the testimony of the three witnesses but could not do so because Fortson was his client as well. The court again denied the motion after the prosecutor asserted that defendants had waived their right to conflict-free representation. The court did require, however, that counsel from the public defender's office sit in on the case and advise the defendants in the event that independent cross-examination was necessary.

Defendants' theory of the case mainly consisted of alibi testimony. Both defendants testified on their own behalf. Fortson denied stating that he had received his leg wounds during the attempted robbery as testified by Fletcher. He explained that he had received them in a disagreement over a craps game the night before the robbery. Fortson testified that he was at his girlfriend's home the night of the robbery. Hamilton also denied involvement in the murder and stated that he was at his girlfriend's home at the time of the murder.

Both Hamilton and Fortson were convicted of felony murder and armed robbery and sentenced to life imprisonment on November 28, 1983. The Georgia Supreme Court affirmed their convictions on appeal. Finding no actual conflict of interest, the court held that both defendants received effective assistance of counsel. It also held that such a claim "may not be raised for the first time on direct appeal." *Hamilton v. State*, 255 Ga. 468, 470, 339 S.E.2d 707 (1986).

On March 13, 1989, Hamilton filed a writ of habeas corpus in the District Court for the Northern District of Georgia pursuant to 28 U.S.C. § 2254. In his report and recommendation, the magistrate found that Hamilton had received effective assistance of counsel because he failed to demonstrate specific instances in the record where a conflict had occurred or where he had been prejudiced by that conflict. The district court adopted the report and recommendation on November 27, 1989, and denied the petition.

On December 26, 1989, Hamilton filed an application for a certificate of probable cause to appeal the denial of his petition for writ of habeas corpus. He further filed a motion for leave to file *in forma pauperis* and for appointment of counsel pursuant to the Criminal Justice Act. *See* 18 U.S.C. § 3006A. His motions for a certificate of probable cause and to file *in forma pauperis* were granted but his motion for appointed counsel was denied. Hamilton proceeded *pro se*, filing a formal notice of appeal on February 5, 1990. Following submission of the initial set of briefs, we appointed counsel to represent Hamilton and both sides filed supplemental briefs.

## Analysis

Although Hamilton raises five issues on appeal, we need only address one issue; whether Hamilton received effective assistance of counsel. Hamilton contends that by requiring him to proceed over the timely objection of counsel with a lawyer representing both himself and Fortson, he was automatically denied effective assistance of

counsel in violation of the Sixth and Fourteenth Amendments.

■ ■ The state argues that the district court properly found that Hamilton had failed to establish an actual conflict of interest and adverse impact on counsel's representation. The state asserts that Hamilton thereby failed to prove ineffective assistance of counsel.[2]

### A. *Standard of Review*

■ In reviewing a petition filed under 28 U.S.C. § 2254, we presume that factual findings made by a state court are correct.[3] *See Sumner v. Mata*, 449 U.S. 539, 546, 101 S.Ct. 764, 768, 66 L.Ed.2d 722 (1981). We review factual conclusions made by the district court under the clearly erroneous standard. *See* Fed.R.Civ.P. 52(a); *see also Amadeo v. Zant*, 486 U.S. 214, 223, 108 S.Ct. 1771, 1777, 100 L.Ed.2d 249 (1988). We review mixed questions of fact and law *de novo.* Whether Hamilton received ineffective assistance of counsel or waived any conflict of interest is a mixed question of fact and law with independent review by this court. *See Cuyler v. Sullivan*, 446 U.S. 335, 341–42, 100 S.Ct. 1708, 1714–15, 64 L.Ed.2d 333 (1980); *McConico v. Alabama*, 919 F.2d 1543, 1545 (11th Cir.1990); *Oliver v. Wainwright*, 782 F.2d 1521, 1524

(11th Cir.), *cert. denied*, 479 U.S. 914, 107 S.Ct. 313, 93 L.Ed.2d 287 (1986).

### B. *Joint Representation*

Hamilton argues that because his counsel timely objected to the joint representation, his right to effective assistance of counsel was violated *per se.* Relying on *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), he argues that he need not show either an actual conflict of interest or any adverse effects on his counsel's performance from that conflict. Hamilton contends that once he timely objected to joint representation and the trial court failed to explore adequately his objection, his Sixth Amendment right was violated and reversal of his conviction is appropriate.

■ Relying on *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), the state contends that in order to obtain reversal of his conviction, Hamilton must demonstrate both an actual conflict of interest and that the conflict adversely affected his lawyer's performance. *Id.* at 348, 100 S.Ct. at 1718. The state argues that because Hamilton failed to demonstrate either an actual conflict or adverse impact, he received effective assistance of counsel.[4]

---

**2.** We reject the state's contention that we lack appellate jurisdiction over this case because of Hamilton's failure to file a formal notice of appeal within the thirty days as required by Federal Rule of Appellate Procedure 4(a). Hamilton did file a motion for a certificate of probable cause and a motion to file *in forma pauperis* within the thirty days. We have held that such a filing "substantially complies with the notice of appeal requirements, and therefore is the equivalent of filing a proper notice of appeal." *Haney v. Mizell Memorial Hosp.*, 744 F.2d 1467, 1472 (11th Cir.1984).

**3.** Section 2254(d) states in pertinent part:

In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State, or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reli-

able and adequate written indicia, shall be presumed to be correct....

**4.** The state's brief on appeal intimates that Hamilton waived his right to conflict-free counsel. We find that such an argument, if intended, would be without merit. A defendant may only waive the right to conflict-free counsel if that waiver is knowing and intelligent. For a waiver "[t]o be knowing and intelligent the defendant must be told (1) that a conflict of interest exists; (2) the consequences to his defense from continuing with conflict-laden counsel; and (3) that he has a right to obtain other counsel." *Duncan v. Alabama*, 881 F.2d 1013, 1017 (11th Cir.1989).

There is no indication from the record that Hamilton was affirmatively informed prior to the first day of trial that there was a conflict of interest, of the consequences therefrom, and of his right to obtain alternate counsel. What is clear from the record is his vigorous objection to joint representation on the first day of trial when the conflict of interest became apparent. We therefore find no waiver of his right to conflict-free representation.

■ The Sixth Amendment guarantees criminal defendants effective assistance of counsel. *See Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984); *Cuyler,* 446 U.S. at 345, 100 S.Ct. at 1716; *Duncan v. Alabama,* 881 F.2d 1013, 1016 (11th Cir.1989). Part of effective assistance of counsel is the avoidance of conflicts of interest. The Supreme Court has emphasized that when counsel is burdened with a conflict of interest, she "breaches the duty of loyalty, perhaps the most basic of counsel's duties" and has therefore failed to provide effective assistance of counsel. *Strickland,* 466 U.S. at 692, 104 S.Ct. at 2067; *see also Buenoano v. Singletary,* 963 F.2d 1433, 1438 (11th Cir.1992).

■ In *Strickland,* the Court held that in order to obtain a reversal of a conviction for ineffective assistance of counsel, a defendant must demonstrate both that "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Id.* at 687, 104 S.Ct. at 2064. The Court also held, however, that "[i]n certain Sixth Amendment contexts, prejudice is presumed." *Id.* at 692, 104 S.Ct. at 2067. Where there is an issue of conflict of interest, the Court stated, "Prejudice is presumed only if the defendant demonstrates that counsel 'actually represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Id.* at 692, 104 S.Ct. at 2067 (quoting *Cuyler,* 446 U.S. at 305, 348, 100 S.Ct. at 1718 (footnote omitted)).

*Cuyler* is limited to those cases in which a defendant raises no objection to joint representation at trial. *Id.* at 348, 100 S.Ct. at 1718; *see also Duncan,* 881 F.2d at 1016 n. 5 ("The opinion in *Cuyler* is specifically limited to cases where the issue was not raised at trial."). The Court stated that "a defendant who objects to multiple representation must have the opportunity to show that potential conflicts impermissibly imperil his right to a fair trial." *Cuyler,* 446 U.S. at 348, 100 S.Ct. at 1718. It assumed that if a defendant objects to joint representation, a trial court has a constitu-

tional responsibility to determine whether an actual conflict exists. *Id.*

This judicial responsibility was established in *Holloway.* In *Holloway,* the trial court appointed one public defender to represent all three defendants accused of robbing and terrorizing five employees of a restaurant. Prior to trial the public defender asked the court to appoint separate counsel for each defendant because the "'the defendants ha[d] stated to him that there is a possibility of a conflict of interest in each of their cases....'" 435 U.S. at 477, 98 S.Ct. at 1175. After holding a hearing the court refused to appoint separate counsel. All three were found guilty.

In reversing their convictions, the Court refused to resolve whether there was actually a conflict of interest. Instead, it held that the trial court erred by "fail[ing] either to appoint separate counsel or to take adequate steps to ascertain whether the risk was too remote to warrant separate counsel." The Court found this failure to appoint separate counsel or to inquire adequately "deprived [defendants] of the guarantee of 'assistance of counsel.'" *Id.* at 484, 98 S.Ct. at 1179. It determined, therefore, that reversal of defendants' convictions was automatic. *Id.* at 488, 98 S.Ct. at 1180.

■ Previously we had left open the issue, "whether a defendant must satisfy the *Cuyler* standard to obtain reversal of his conviction if the trial judge refused to inquire into the *possibility* of conflict after objection." *Duncan,* 881 F.2d at 1017 n. 5 (emphasis added) (citing *Holloway* ). We now hold that when defendants make timely objections to joint representation, they need not show an actual conflict of interest when a trial court fails to inquire adequately into the basis of the objection. In such circumstances the trial court has failed to discharge its constitutional duty under *Holloway* to determine whether the defendants are receiving adequate assistance of counsel, a duty separate from the *Cuyler* framework. Reversal, therefore is automatic. . .

■ We do not depart from the established precedent of this circuit that in the

absence of a timely objection, a defendant must demonstrate that there was an actual conflict of interest that adversely affected her attorney's performance. *See, e.g., Buenoano,* at 1438; *McConico v. Alabama,* 919 F.2d at 1545; *Zamora v. Dugger,* 834 F.2d 956, 960–61 (11th Cir.1987); *Lightbourne v. Dugger,* 829 F.2d 1012, 1023 (11th Cir.1987), *cert. denied,* 488 U.S. 934, 109 S.Ct. 329, 102 L.Ed.2d 346 (1988); *Smith v. White,* 815 F.2d 1401, 1404 (11th Cir.), *cert. denied,* 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987). Rather, we hold that in the situation where there is both a timely objection *and* the trial court fails to appoint separate counsel *or* to inquire adequately into the possibility of a conflict of interest, the reversal will be automatic. *See United States v. Sutton,* 794 F.2d 1415, 1419 (9th Cir.1986) (finding Sixth Amendment violation requiring automatic reversal if "trial judge fails either to appoint separate counsel or to take adequate steps to ascertain whether the risk is too remote to warrant individual representation"); *United States v. Cirrincione,* 780 F.2d 620, 625 (7th Cir.1985) (no automatic reversal unless a trial court fails to conduct an inquiry after a timely objection); *United States v. Punch,* 722 F.2d 146, 152 (5th Cir.1983) (same).

Applying this legal standard requires that we address two issues: (1) whether counsel's objection on the first day of trial was timely; and (2) if the objection was timely, whether the trial court adequately explored the possibility of conflict of interest.

#### 1. Timeliness

■ After an examination of the record, we find that the objection was timely. Hamilton's counsel explained his delay:

> My investigation in this matter, your honor, which continued up until ten o'clock last night, convinces me that these defendants should have separate counsel. The court has previously denied our motion to sever and there are matters that will arise in the course of this trial if the men are tried together with the same counsel that will make it impossible for me to adequately defend one without, in the eyes of the jury, seeming to, at least by default admit the guilt of the other.

Record at 9. Counsel's investigation continued until the time of trial because he continued to receive information from the prosecution until the weekend prior to trial. We find that any delay in counsel's objection to joint representation was caused by the prosecution's delay in providing evidence to the defense and/or the inadequacy of the information provided. Defense counsel received information from the prosecution only after repeated requests and motions.[5] Thus counsel objected to joint representation in as timely a manner as the circumstances allowed.

#### 2. Adequate Inquiry by the Trial Court

■ We also find that the trial court inadequately inquired into the possibility of a conflict of interest. The court's inquiry consisted solely of commenting in a colloquy during the first day of trial that it doubted that defense counsel wished to elaborate how there was a conflict of interest. Defense counsel did not respond because the comment was made in open court. The court then stated that it had read the trial file in relation to an unrelated motion and did not see how a conflict of interest could arise. No further inquiry was made.

We find that the reading of a file for an unrelated purpose is inadequate exploration of the possibility of conflict. Further, by asking defense counsel to disclose trial strategy in open court, the trial court improperly placed counsel in a situation where in order to adequately respond he

---

5. We further note that counsel was given an incorrect address for Fletcher, the witness who testified at trial that Fortson had told him Hamilton had shot Hynes. Fletcher was not at the address listed because he had been arrested on an unrelated charge. At the October 17 hearing defense counsel discovered that Fletcher was incarcerated but was not told in which jail he was being held. Counsel therefore had no opportunity to interview him prior to his testimony. After Fletcher's testimony, counsel renewed his motion for separate counsel because of the serious nature of the conflict of interest that Fletcher's testimony posed.

would have had to disclose client confidences, thereby breaching attorney/client confidentiality. As the Supreme Court stated in *Holloway,* "[O]ur holding [does not] preclude a trial court from exploring the adequacy of the basis of defense counsel's representations regarding a conflict of interest without *improperly* requiring disclosure of the confidential communications of the client." 435 U.S. at 487, 98 S.Ct. at 1179 (emphasis added). We therefore hold that the trial court inadequately investigated the possibility of conflict in this case.

### C. *Conclusion*

■ After review of the record, we conclude that Hamilton timely objected to joint representation because it involved a conflict of interest and that the trial court failed adequately to explore the possibility of conflict of interest as required by *Holloway.* Hamilton's Sixth and Fourteenth Amendment rights of effective assistance of counsel were violated and reversal is automatic.[6]

We conditionally grant Hamilton's petition for writ of habeas corpus. Accordingly, the writ shall issue unless, within 90 days from the date of this opinion, the state has commenced proceedings to retry the petitioner.

---

**6.** Even under the more restrictive *Cuyler* standard, Hamilton would be entitled to a reversal of his conviction because there was an actual conflict of interest that adversely impacted his counsel's performance. If separately represented, Hamilton might have been able to object to Fletcher's testimony as inadmissible hearsay against him. Because Hamilton and Fortson were jointly represented, however, counsel failed to object because it was admissible against Fortson and to do otherwise might have prejudiced Fortson's defense. Counsel also failed to cross-examine Fortson on whether he might have made the statement to Fletcher so as to avoid an intentional murder charge.

In addition, though both defendants utilized an alibi defense, Hamilton, if separately represented, could have exploited Moore's shaky identification of him. At the physical lineup Moore immediately picked Fortson out. Her identification of Hamilton took considerably more time. She initially provided a significantly more detailed description of the robber later identified as Fortson. In describing the robber, later identified as Hamilton, she was only able to describe general features because she had only been able to see the second robber for a brief instance. We therefore find that the *Cuyler* standard has been met in this case.