UNITED STATES of America

v.

Timothy Lynn BURRASTON

No. P–01–CR–152.

United States District Court,
W.D. Texas,
Pecos Division.

Jan. 4, 2002.

James J. Miller, Jr., Assistant U.S. Attorney, Alpine, TX, for the Government.

David B. Fannin, Alpine, TX, for Defendant.

ORDER ADOPTING IN PART AND REJECTING IN PART THE REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE AND GRANTING IN PART AND DENYING IN PART DEFENDANT BURRASTON'S MOTION TO SUPPRESS DEPOSITION TESTIMONY

FURGESON, District Judge.

Before the Court are Defendant Burraston's Motion to Suppress Deposition Testimony, filed on June 12, 2001, and the Report and Recommendation of the United States Magistrate Judge to whom Defendant's Motion had been referred, filed on August 21, 2001, in the above-styled matter. The Magistrate Judge recommended that Defendant's Motion be granted in part and denied in part. Defendant timely objected.

The Court and Magistrate Judge agree that, because only one of the depositions Defendant seeks to suppress was affected by an actual conflict of interest, Defendant's Motion should be GRANTED IN PART and DENIED IN PART. In reach-

ing this conclusion, the Magistrate Judge found that he was not duty-bound to inquire into conflicts of interest; with this finding the Court does not agree. Accordingly, his Report will be ADOPTED IN PART and REJECTED IN PART.

## STANDARD OF REVIEW

A district court reviews de novo a magistrate judge's report and recommendation if a party files specific objections within ten days of the report's receipt.[1] If no objections are filed, the court reviews the report for findings and recommendations that are clearly erroneous or contrary to law.[2] Defendant timely filed specific objections, and therefore, the Court reviews de novo the Magistrate Judge's Report.

## FACTS AND PROCEDURAL HISTORY

On April 3, 2001, Defendant Timothy Lynn Burraston and Elden Edward Kidd were charged in an eight-count indictment with smuggling aliens across the United States's border with Mexico in violation 8 U.S.C. §§ 1324(a)(1)(A)(ii), (a)(1)(A)(v)(II), and (a)(2).

Defendant and Kidd made their initial appearances before United States Magistrate Judge Durwood Edwards on March 23, 2001. That same day, both defendants agreed with attorney Anthony Foster that he would jointly represent them, understanding that each would have to pay a retainer fee to secure Foster's services and that, should a conflict of interest arise, Burraston would seek other counsel. Kidd paid Foster's fee soon thereafter.

The defendants' preliminary examinations and detention hearings were held on March 26, 2001. Shortly before these proceedings began, Defendant informed Foster that he was unable to pay his retainer fee and would have to hire another attorney or ask the Court to appoint one. However, Defendant wanted to go ahead with his examination and detention hearing, so Foster agreed to represent him in these two matters. Both Defendant and Kidd were denied bond, and Foster agreed to extend his representation of Burraston through an appeal of the detention order. However, as the participants left the courtroom, all apparently believed that Foster now represented Burraston only as concerned his pretrial detention.

Depositions of the four aliens Defendant and Kidd allegedly ushered across the Rio Grande were originally scheduled for March 30, 2001. However, the deposition date was moved to March 28, 2001 by an agreement between the Government and Foster. Two days did not afford Burraston enough time to obtain counsel, and he arrived at the deposition without representation. Without consulting Burraston, Foster then assumed he would be deposing the four material witnesses on behalf of both Kidd and Defendant. As he had been from the beginning, Foster was wary of the risk of conflict inherent in joint representation. But based on brief conversations with Burraston and more extensive consultation with Kidd, he foresaw no actual conflict arising; each defendant's account of the matter agreed with the other's.

When the depositions began, Foster was introduced as representing each defendant, and that he was both Burraston's and Kidd's attorney was repeated several times thereafter. The depositions of the first three witnesses, Pio Carrillo–Lomeli, Jesus Alonzo–Martinez, and Jose Escamilla–Martinez, seemed to go smoothly.

---

**1.** 28 U.S.C. § 636(b)(1).

**2.** *See United States v. Wilson,* 864 F.2d 1219 (5th Cir.1989).

Throughout their interrogation, Defendant acquiesced to Foster's representation and participated in his examination by passing Foster questions. However, during a break in the deposition of the fourth material witness, Noe Villegas–Alarcon, comments made by Defendant evinced a conflict between him and Kidd. Burraston announced during the same pause in questioning that Foster did not represent him now nor had he at any point during the depositions. A few more questions were asked of Villegas–Alarcon, and the Government was informed of Burraston's position. On April 2, 2001, Foster filed a notice of appeal of Defendant's and Kidd's detention order and then withdrew as Defendant's counsel. Federal Public Defender David Fannin was appointed to replace him. The witnesses have all returned to Mexico.

## DISCUSSION

### Opportunity to Cross–Examine

Defendant Timothy Lynn Burraston seeks to suppress the testimony of the four witnesses deposed on March 28, 2001. He contends that its admission would contradict the Confrontation Clause of the Sixth Amendment and is not authorized by the germane evidentiary rules, Federal Rule of Criminal Procedure 15(e) and 18 U.S.C. § 1324(d), because he was not given a meaningful opportunity to cross-examine the witnesses.

### A. Confrontation Clause

■ The admission of an unavailable witness's recorded testimony complies with the Confrontation Clause if the defendant against whom it is offered was represented by counsel and had a complete and adequate opportunity to cross-examine the witness when the testimony was given.[3] That the witnesses, who have voluntarily returned to Mexico, are unavailable is not disputed. Defendant asserts that he was unrepresented at the depositions, but his failure to object to Foster's identification as his attorney and his participation in Foster's examination belies this assertion. Thus, the admission of the aliens' testimony would be prohibited by the Confrontation Clause only if Defendant were not given an opportunity to cross-examine the witnesses.

### B. Federal Rule of Criminal Procedure 15(e)

Federal Rule of Criminal Procedure 15(e) provides in relevant part:

> At the trial or upon any hearing, a part or all of a deposition, so far as otherwise admissible under the rules of evidence, may be used as substantive evidence if the witness is unavailable, as unavailability is defined in Rule 804(a) of the Federal Rules of Evidence.

Although deposition statements are generally to be excluded as hearsay if offered for their substance,[4] they are "otherwise admissible" as former testimony if the declarant is unavailable and the party against whom the testimony is offered had an opportunity to develop the testimony by direct, cross, or redirect examination.[5] Again, whether the aliens' testimony can be used to convict Defendant turns on whether he was deprived of an opportunity to cross-examine them.

### C. 8 U.S.C. § 1324(d)

The witnesses' testimony could also come in under 8 U.S.C. § 1324(d) which provides:

---

**3.** 2 Charles Alan Wright, Federal Practice And Procedure § 241 (3d ed.2000).

**4.** Fed. R. Evid. 801(c); Fed. R. Evid. 802.

**5.** Fed. R. Evid. 804(b)(1).

Notwithstanding any provision of the Federal Rules of Evidence, the video-taped (or otherwise audiovisually preserved) deposition of a witness to a violation of subsection (a) of this section who has been deported or otherwise expelled from the United States, or is otherwise unable to testify, may be admitted into evidence in an action brought for that violation if the witness was available for cross examination and the deposition otherwise complies with the Federal Rules of Evidence.

Defendant's complaints about the testimony's admission under this statute echo his objections above.

Defendant claims that he was not given an opportunity to cross-examine the witnesses, as required for the admission of their testimony by each of the above-mentioned provisions, because his counsel's questioning was constitutionally infirm. Defendant asserts that his right to the effective assistance of counsel, secured by the Sixth Amendment, was violated because Foster labored under a conflict of interest during the depositions. If he is correct that Foster's representation was rendered ineffective by a conflict, the testimony of these witnesses must be sup-

pressed to ensure that Defendant is given a fair trial.

### Right to Counsel

■ To establish an ineffective assistance of counsel claim, a defendant generally must demonstrate that: (1) counsel's performance fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced his case.[6] However, a defendant's load is lightened when, as here, he alleges that his advocate was affected by an actual conflict of interest.[7] Exactly what weight a defendant must carry depends upon whether a trial court was obliged to inquire into possible conflicts.

■ A Fifth Circuit trial court's duty of inquiry springs from three sources. *Cuyler v. Sullivan*, 446 U.S. 335, 347, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), recognizes that a court is obliged to look into possible conflicts of interest whenever it is alerted to a conflict or knows or reasonably should know that a particular conflict exists.[8] Federal Rule of Criminal Procedure 44(c) imposes a duty to inquire whenever defendants are jointly represented.[9] Finally, *United States v. Garcia*, 517 F.2d 272 (5th Cir.1975), mandates an inquiry into con-

---

6. *Strickland v. Washington*, 466 U.S. 668, 687–88, 692–93, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

7. *Id.* at 692, 104 S.Ct. 2052.

8. *See also Wheat v. United States*, 486 U.S. 153, 160, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988) ("[A] court confronted with and alerted to possible conflicts of interest must take adequate steps to ascertain whether the conflicts warrant separate counsel.") (citing *Cuyler*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333); *Wood v. Georgia*, 450 U.S. 261, 272, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981) ("[T]he *possibility* of a conflict of interest was sufficiently apparent at the time of the revocation hearing to impose upon the court a duty to inquire further.") (emphasis in original).

9. Federal Rule of Criminal Procedure 44(c) provides in relevant part:

Whenever two or more defendants have been jointly charged pursuant to Rule 8(b) or have been joined for trial pursuant to Rule 13, and are represented by the same retained or assigned counsel or by retained or assigned counsel who are associated in the practice of law, the court shall promptly inquire with respect to such joint representation and shall personally advise each defendant of the right to the effective assistance of counsel, including separate representation. Unless it appears that there is good cause to believe no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel.

flicts of interest when a court knows that an actual conflict exists.[10]

■ If a court was obliged to inquire by only Rule 44(c)—when defendants were jointly represented and the court neither knew nor reasonably should have known of a possible (*Cuyler*) or actual (*Garcia*) conflict—and failed to do so, a defendant must show that his attorney was burdened by an actual conflict to establish a constitutional violation.[11] An actual conflict exists when defense counsel is compelled to choose between competing interests or is pushed to perfidy by commitments to others.[12] To make this showing, a defendant must identify in the record where his attorney actually chose between alternative courses of action; if counsel never made such a choice, the conflict remained hypothetical.[13]

■ When a court had no duty to inquire, had a *Cuyler* duty and failed to carry it, or when a *Garcia* duty went unheeded, a Fifth Circuit defendant must demonstrate: (1) that an actual conflict of interest (2) adversely affected his counsel's performance to establish that he has been denied effective assistance of counsel.[14] A defendant's burden as to the actual conflict

prong is the same here as in the Rule 44(c) context. To establish that counsel's representation was adversely affected, a defendant must demonstrate only that there was a plausible, alternative strategy available to his counsel that was not pursued because of the actual conflict.[15]

The Fifth Circuit's position on how to handle a court's failure to carry its *Cuyler* duty is not consonant with that of some other Circuits, but is tenable, at least in part. Circuits have split over what to make of *Wood v. Georgia*, 450 U.S. 261, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981), in which a possible conflict of interest presented itself, the trial court failed to discharge its *Cuyler* duty of inquiry, and the case was remanded so that the trial court could determine whether an actual conflict existed. Some Circuits have found that when a trial court was obliged by *Cuyler* to inquire into possible conflicts and failed to do so, reversal, or, as applied to these facts, suppression, is automatic; neither an actual conflict nor an adverse effect need be shown, following the literal commands of *Wood*[16] and *Holloway v. Arkansas*, 435 U.S. 475, 488, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978).[17] However, other Circuits, the

---

10. *United States v. Greig*, 967 F.2d 1018, 1022 (5th Cir.1992); *United States v. Carpenter*, 769 F.2d 258, 263 (5th Cir.1985).

11. *United States v. Benavidez*, 664 F.2d 1255, 1259 (5th Cir.1982).

12. *Perillo v. Johnson*, 205 F.3d 775, 781, 803 (5th Cir.2000) [hereinafter *Perillo II*].

13. *Perillo v. Johnson*, 79 F.3d 441, 447–48 (5th Cir.1996) [hereinafter *Perillo I*]; *Beets v. Scott*, 65 F.3d 1258, 1277 (5th Cir.1995).

14. *Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); *Perillo II*, 205 F.3d at 781; *Beets*, 65 F.3d at 1277; *Greig*, 967 F.2d 1018.

15. *Perillo II*, 205 F.3d at 808.

16. *Wood*, 450 U.S. at 272 n. 18, 101 S.Ct. 1097 ("[*Cuyler v.*] *Sullivan mandates* a reversal when the trial court has failed to make an inquiry even though it 'knows or reasonably should know that a particular conflict exists.'") (emphasis in original) (quoting *Cuyler*, 446 U.S. at 347, 100 S.Ct. 1708).

17. *See, e.g., Ciak v. United States*, 59 F.3d 296, 303 (2d Cir.1995) (collecting cases from the Second, Seventh, Ninth, and Tenth Circuits); *Hamilton v. Ford*, 969 F.2d 1006, 1011 (11th Cir.1992) ("[W]hen defendants make timely objections to joint representation, they need not show an actual conflict of interest when a trial court fails to inquire adequately into the basis of the objection. In such circumstances the trial court has failed to discharge its constitutional duty under *Holloway* to determine whether the defendants are receiving ade-

Fifth apparently among them, have found in *Wood*'s remand order a requirement that a defendant demonstrate that an actual conflict existed to succeed on appeal.[18]

In addition to the actual conflict requirement arguably imposed by *Wood*, the Fifth Circuit has held that a court's failure to conduct a *Cuyler* inquiry requires reversal only if counsel's performance was adversely affected.[19] This holding makes meaningless a court's failure to conduct a *Cuyler* inquiry; the standard for reversal is the same regardless of whether a court has performed its duty. Employing the same standard irrespective of whether a court had a *Cuyler* duty seems to contradict Supreme Court conflicts jurisprudence, but with respect to the first three depositions taken on March 28, this Court finds it unnecessary to reconcile the inapposite instructions from the courts above. That a defendant must show an actual conflict to obtain a reversal or suppress evidence when a court fails to discharge its Rule 44(c) duty, the duty imposed by *Garcia*, or that recognized by *Cuyler*, is both clear and consistent with the commands of both of the Court's masters. Because Defendant can demonstrate an actual conflict only as to the final deposition taken, this Court

agrees with the Magistrate Judge that only the deposition of Noe Villegas–Alarcon need be suppressed. A conflict did not render counsel's assistance ineffective during the depositions of Pio Camillo–Lomeli, Jesus Alonzo–Martinez, and Jose Escamilla–Martinez, meaning that their testimony may be admitted without violating the Confrontation Clause.

However, the Court disagrees with the Magistrate Judge's conclusion that he had no duty to inquire into conflicts of interest. Defendant's counsel informed the Magistrate Judge at Defendant's preliminary examination and detention hearing that there would "probably [be] a Rule 44 problem at some point in the future."[20] Because this was a case of joint representation, the Magistrate Judge was obliged by Rule 44(c) to inquire into possible conflicts, and counsel's comment implicated the Magistrate Judge's *Cuyler* and *Garcia* duties.

Magistrate Judge Edwards's decision not to inquire is understandable. His docket covers a 12,000–square–mile area on the United States–Mexico border and demands that he make the almost 100–mile trip from Alpine to Pecos every other day.

---

quate assistance of counsel, a duty separate from the *Cuyler* framework. Reversal, therefore is automatic.").

18. *See, e.g.*, *Greig*, 967 F.2d 1018; *Brien v. United States*, 695 F.2d 10, 15 n. 10 (1st Cir.1982) ("In *Wood v. Georgia* ... the Supreme Court announced what appears to be a prophylactic rule requiring judges to conduct an inquiry about potential conflicts of interest when they know or reasonably should know that a conflict might exist. Some courts, looking to *Wood*'s language stating that a reversal is 'mandated' when the required inquiry is not conducted have assumed that the trial court's failure to inquire about potential conflicts in and of itself requires a reversal of the conviction.... Were that a correct read-

ing of *Wood*, reversal would be required here because there was a possible conflict that the district court was made aware of and no inquiry was conducted prior to conviction. The Court in *Wood*, however, was faced with a similar situation and it did not require an automatic reversal of the conviction but merely remanded the case to enable the trial court to conduct the necessary inquiry, the implication being that the convictions would only be overturned if an actual conflict were found."); *United States v. Taylor*, 657 F.2d 92 (6th Cir. 1981).

19. *Greig*, 967 F.2d 1018.

20. Tr. of Proceedings August 9, 2001—Mot. to Suppress at 21.

Dealing with this docket and wanting to return uncharged illegal immigrants to their homes and families expeditiously, he was pressured to pare the proceedings as much as possible. Assured by the good-faith belief of a diligent defense lawyer that the joint representation would conclude with Burraston's detention hearing, an inquiry into conflicts of interest did not appear essential; however, unforeseen events made it so. Even a judge with credentials as impeccable as Magistrate Judge Edwards's can get caught between an intractable docket and an unanticipated occurrence.

Almost any judge in a similar situation would have followed Magistrate Judge Edwards's inclination to forgo a conflicts inquiry, but it was nonetheless incumbent upon him to inquire to protect the accused's right to counsel.[21] By permitting the depositions of material witnesses to be taken but two days after Defendant's detention hearing, the Magistrate Judge placed Defendant in a position of either being unrepresented at the depositions or having the joint representation continue. Because the latter course was taken, the Magistrate Judge was not relieved of his duties of inquiry.

Even though the Magistrate Judge was obliged to inquire as to conflicts of interest, Defendant must at least demonstrate that there was an actual conflict to have any of the testimony suppressed, meaning that he must establish that Foster actually chose between competing interests. To have made such a choice, Foster must have been aware of the conflict.[22] As Foster was not aware of the conflict until the deposition of the fourth witness, he could not have made such a choice during the first three depositions, meaning that a conflict did not render Foster's cross-examination ineffective. Thus, the testimony of the first three witnesses is admissible. However, an actual conflict did affect Foster's questioning of Noe Villegas–Alarcon.

Whether Defendant need demonstrate that counsel's assistance was adversely affected to have this testimony suppressed is unclear. Under Rule 44(c), he does not; under *Garcia*, he does; and under *Cuyler*, he might. However, the question is moot, for its answer would not change the result. If he does not need to demonstrate an adverse effect, the testimony will be suppressed. If, on the other hand, an adverse effect must be shown, Defendant can carry this burden. The Government's evidence suggested that Kidd was more deeply involved in the smuggling operation than Defendant, and emphasizing Kidd's greater participation was a plausible alternative strategy. Foster was precluded from pursuing this defense by his obligation to Kidd, meaning that Defendant could establish that his representation was adversely affected should he have to.

Defendant has also charged that Foster spent an inadequate amount of time with him prior to the depositions and because of this neglect, did not uncover the conflict sooner. An objection to counsel's diligence is properly analyzed under *Strickland*. To succeed on this ground, Defendant would have show that counsel's performance fell below an objective standard of reasonableness and demonstrate prejudice, that there was a reasonable probability that counsel's error changed the result of the proceeding.[23] Given that the result of this pro-

**21.** *Glasser v. United States,* 315 U.S. 60, 71, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

**22.** *Beets v. Scott,* 65 F.3d 1258, 1277 (5th Cir.1995); *see also id.* at 1291 (King, J., dissenting) (explicating the majority opinion).

**23.** *Perillo II,* 205 F.3d 775, 781 (5th Cir.

ceeding is unknown, this claim cannot be evaluated.

## CONCLUSION

To establish that a conflict of interest has rendered one's attorney's assistance ineffective, one must, at the very least, demonstrate that one's counsel has been burdened by an actual conflict. An attorney's representation can be corrupted by an actual conflict only if he is made to choose between competing interests. Because Defendant can carry this burden as to only one of the deponents whose testimony he seeks to suppress, the Court agrees with the Magistrate Judge that Defendant's Motion should be GRANTED IN PART and DENIED IN PART. However, because, contrary to his Report, the Magistrate Judge was obliged to inquire into conflicts of interest, his Report should be ADOPTED IN PART and REJECTED IN PART.

It is therefore ORDERED that the Report and Recommendation of the United States Magistrate Judge be ADOPTED IN PART and REJECTED IN PART.

It is further ORDERED that Defendant Burraston's Motion to Suppress Deposition Testimony be GRANTED IN PART and DENIED IN PART. The deposition testimony of Noe Villegas–Alarcon is suppressed, but the deposition testimony of Pio Camillo–Lomeli, Jesus Alonzo–Martinez, and Jose Escamilla–Martinez will be available for admission into evidence.