Michael B. SELSOR, Petitioner–Appellant,

v.

Stephen W. KAISER, Respondent–Appellee.

No. 93–5002.

United States Court of Appeals, Tenth Circuit.

May 2, 1994.

Submitted on the briefs: *

Michael B. Selsor, petitioner-appellant, appeared pro se on the opening brief. Michael G. Katz, Federal Public Defender, and James P. Moran, Asst. Federal Public Defender, Denver, CO, were appointed to represent him on the supplemental brief.

Susan B. Loving, Atty. Gen. of Oklahoma, and Diane L. Slayton, Asst. Atty. Gen., Oklahoma City, OK, for respondent-appellee.

Before BALDOCK and McWILLIAMS, Circuit Judges, and SAFFELS, District Judge.**

BALDOCK, Circuit Judge.

Petitioner Michael B. Selsor appeals the district court's denial of his petition for writ of habeas corpus, 28 U.S.C. § 2254. We have jurisdiction under 28 U.S.C. § 1291.

In January 1976, in the state district court for Tulsa County, Oklahoma, Petitioner and Richard Dodson, a codefendant, were tried jointly on charges of murder in the first degree—*i.e.*, a homicide perpetrated in the commission of an armed robbery (felony murder), the underlying felony of armed robbery, and shooting with an intent to kill. Petitioner and Dodson were represented by the same counsel. Petitioner was convicted

on all three counts and was sentenced to death on the murder charge, twenty-five years imprisonment on the armed robbery conviction, and twenty years imprisonment on the shooting with intent to kill charge. Dodson was acquitted on the murder charge, but convicted on the other two charges.

Petitioner's convictions were affirmed on direct appeal by the Oklahoma Court of Criminal Appeals, although the court modified Petitioner's death sentence on the murder charge to life imprisonment, holding that Oklahoma's death penalty statute was unconstitutional. *See Selsor v. State*, 562 P.2d 926 (Okla.Crim.App.1977). In his direct appeal, Petitioner alleged, *inter alia*, that the trial court erred in failing to either grant a severance of his trial from Dodson's trial or appoint separate counsel. Petitioner did not raise a double jeopardy issue in his direct appeal.

In November 1978, Petitioner filed an application for post-conviction relief, Okla.Stat. Ann. tit. 22, § 1080 (West 1986), in the state district court in Tulsa, Oklahoma. In that application the only issue Petitioner raised was that he had been denied his Sixth Amendment right to effective assistance of counsel because the trial court refused to sever the trials or appoint separate counsel for Petitioner and Dodson. Petitioner did not raise a double jeopardy issue in this post-conviction application. The state district court denied Petitioner's application in February 1980, and the denial was later affirmed by the Oklahoma Court of Criminal Appeals in an unpublished order.

In July 1989, Petitioner filed a second application for post-conviction relief in the state district court in Tulsa, Oklahoma, alleging for the first time that he had been punished in violation of the Double Jeopardy Clause of the Fifth Amendment when he was convicted and sentenced for both the charge of felony murder and the underlying felony of armed robbery. The state district court denied that application on the ground that Petitioner failed to raise the double jeopardy claim in the trial court, on direct appeal, or in his first

---

* Both parties waived oral argument.

** Honorable Dale E. Saffels, Senior District Judge for the District of Kansas, sitting by designation.

application for post-conviction relief; therefore, the court held, under Oklahoma law, the claim was waived. In an unpublished order, the Oklahoma Court of Criminal Appeals affirmed the denial, holding that all issues previously ruled upon by the Oklahoma Court of Criminal Appeals were res judicata, and that Petitioner had waived all issues raised for the first time in his second petition for post-conviction relief. *See* Okla.Stat.Ann. tit. 22, § 1086 (West 1986).

In October 1991, Petitioner, appearing pro se, filed the present petition for relief pursuant to § 2254 in the United States District Court for the Western District of Oklahoma. In this petition, Petitioner raised the following two grounds for relief: (1) he was denied his Sixth Amendment right to the effective assistance of counsel because of his attorney's conflict of interest—*i.e.,* the same attorney represented both Petitioner and Dodson; and (2) the separate convictions and sentences for felony murder and the underlying felony—*i.e.,* armed robbery, violated the Double Jeopardy Clause of the Fifth Amendment. Respondent filed a motion to dismiss the petition for failure to exhaust state remedies as to Petitioner's claim of ineffective assistance of counsel.

On December 4, 1992, the district court denied Petitioner's petition. The district court did not grant Respondent's motion to dismiss for failure to exhaust. Instead, the district court addressed the merits of Petitioner's ineffective assistance of counsel claim and concluded that Petitioner was not entitled to relief. The court also found that Petitioner was procedurally barred from raising his double jeopardy claim. Finally, the district court concluded that refusing to entertain Petitioner's double jeopardy claim would not result in a fundamental miscarriage of justice. Petitioner appeals the district court's denial of his petition.

In this court, Petitioner filed his initial brief pro se. Thereafter, we entered an order appointing the Federal Public Defender for the District of Colorado to represent Petitioner on appeal.[1]

## I.

Petitioner first contends that he was denied his Sixth Amendment right to effective assistance of counsel because his trial counsel had a conflict of interest in that he represented both Petitioner and Dodson at trial. The district court apparently concluded that Petitioner had raised that particular issue in the state courts of Oklahoma and therefore had exhausted his state remedies.[2] The district court rejected Petitioner's claim of ineffective assistance of counsel on the merits, stating that Petitioner had not shown that any "conflict of interest," resulting from trial counsel's representation of both Petitioner and Dodson, had "actually affected" the "adequacy of [counsel's] representation" of Petitioner.

Petitioner and Dodson were jointly represented at trial by two attorneys from the state public defender's office, with one attorney conducting both defenses while the other attorney supervised that attorney. Petitioner and Dodson both entered pleas of not guilty. Prior to trial, counsel moved to sever the trials of Petitioner and Dodson, or appoint separate counsel for each, because of a possible conflict of interest. That motion was denied. On the day the case came up for trial, Dodson amended his plea to not guilty by reason of insanity, at which time counsel again moved for separate trials, or separate counsel, which motion was again denied.

At trial, the prosecution called an eye witness to the robbery and shooting, who gave her account of events. The prosecution also introduced confessions from both Petitioner

---

1. In that order we directed counsel to address, by supplemental brief, the following issues: (1) whether the fundamental miscarriage of justice exception to the cause and prejudice requirements for procedurally defaulted claims, as it applies in the sentencing context, is available in a noncapital sentencing case; (2) if so, whether the exception is applicable in this case; and (3) whether the trial court's refusal to appoint sepa-

rate counsel for Petitioner deprived Petitioner of effective assistance of counsel.

2. On appeal, Respondent has abandoned his failure to exhaust defense. In any event, we conclude Petitioner has successfully exhausted this claim.

and Dodson.[3] After the prosecution rested, both defendants invoked their constitutional right not to testify. The only witness called by either defendant was Dr. Rustico Dizon Garcia, a forensic psychiatrist, who had examined Dodson. Although he was called on Dodson's behalf, the doctor testified that he had no opinion as to whether Dodson was legally sane, or insane, at the time of the robbery and murder.

■ In rejecting Petitioner's claim, the district court relied on the Supreme Court's decision in *Cuyler v. Sullivan*, 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980), in which the Court held that in order to demonstrate ineffective assistance of counsel, a defendant must establish that an "actual conflict of interest adversely affected his lawyer's performance." We conclude the district court's reliance on *Cuyler's* "actual conflict" standard was misplaced.

In *Cuyler* the defendant brought a § 2254 petition for habeas relief based, in part, on an allegation that his two trial attorneys represented potentially conflicting interests in their joint representation of the defendant and two codefendants. *Id.* at 337–38, 100 S.Ct. at 1712–13. The defendant in *Cuyler*, however, did not object to the joint representation at trial. *Id.* Because of the defendant's failure to object at trial, *Cuyler* concluded that the trial court had no duty to inquire about the possibility of a conflict of interest. *Id.* at 347, 100 S.Ct. at 1716. The Court also held that the defendant could not establish a Sixth Amendment violation based on a showing of a mere possibility of a conflict of interest; rather, the defendant must demonstrate an actual conflict. *Id.* at 348, 100 S.Ct. at 1718. The Court in *Cuyler* announced this "actual conflict" standard, however, by stating, "[i]n order to establish a violation of the Sixth Amendment, *a defendant who raised no objection at trial* must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Id.* (emphasis added). This language makes it clear that the *Cuyler* "actual conflict" standard applies only in those cases

in which the defendant fails to raise a conflict of interest objection at trial. *See Hamilton v. Ford*, 969 F.2d 1006 (11th Cir.1992) ("*Cuyler* is limited to those cases in which a defendant raises no objection to joint representation at trial"), *cert. denied*, — U.S. —, 113 S.Ct. 1625, 123 L.Ed.2d 183 (1993); *see also United States v. Martin*, 965 F.2d 839, 841 (10th Cir.1992) (applying *Cuyler* actual conflict standard "[b]ecause defendant failed to raise a Sixth Amendment objection at trial"); *United States v. Bowie*, 892 F.2d 1494, 1500 (10th Cir.1990) (same). Because in the instant case, Petitioner vigorously objected to the joint representation at trial, *Cuyler* is inapplicable.

We conclude that the instant case is controlled by the Supreme Court's holding in *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). In *Holloway*, one public defender represented three codefendants who were tried jointly. *Id.* at 477, 98 S.Ct. at 1175. Weeks before trial, counsel moved the court to appoint separate counsel for each defendant because "the defendants ha[d] stated to him that there is a possibility of a conflict of interest in each of their cases." *Id.* After conducting a hearing on the motion, the court refused to appoint separate counsel. *Id.* Before the jury was empaneled, defense counsel renewed the motion for appointment of separate counsel, and again the court denied the motion. *Id.* at 478, 98 S.Ct. at 1175. Finally, at trial, after the prosecution had rested, defense counsel informed the court that all of the codefendants insisted on taking the stand, and as a result, he would be unable to represent all three because he could not effectively cross-examine any of them. *Id.* at 478–81, 98 S.Ct. at 1175–77. The court stated, *inter alia*, "[t]hat's all right; let them testify. There is no conflict of interest." *Id.* at 479, 98 S.Ct. at 1176. All three codefendants were eventually convicted. The Arkansas Supreme Court affirmed the convictions on the basis that the record demonstrated no actual conflict of interest or prejudice. *Id.* at 481, 98 S.Ct. at 1177.

---

**3.** There was other incriminating evidence, which need not be recounted here. For a more complete recital of the facts and circumstances sur-

rounding this case, see *Dodson v. State*, 562 P.2d 916 (Okla.Crim.App.1977).

Without ever reaching the issue of whether there was an actual conflict of interest, the Supreme Court reversed the convictions. *Id.* at 484, 98 S.Ct. at 1178. The *Holloway* Court determined that because defense counsel timely objected to the joint representation at trial, the trial court erred in failing to "either appoint separate counsel, or to take adequate steps to ascertain whether the risk was too remote to warrant separate counsel." *Id.* at 484, 98 S.Ct. at 1179. The Court determined that this failure deprived the defendants "of the guarantee of 'assistance of counsel,'" *id.*, and necessitated automatic reversal of the defendants' convictions, *id.* at 487–91, 98 S.Ct. at 1180–82. Under the *Holloway* standard, the trial court's failure to appoint separate counsel, or adequately inquire into the possibility of conflict, in the face of a timely objection by defense counsel, demonstrates ineffective assistance of counsel without a showing of actual conflict of interest. *See id.; see also Hamilton,* 969 F.2d at 1011 ("[W]hen defendants make timely objections to joint representation, they need not show an actual conflict of interest when a trial court fails to inquire adequately into the basis of the objection."). In this situation, prejudice to the defendant is presumed. *See* 435 U.S. at 489, 98 S.Ct. at 1181 ("[P]rejudice is presumed regardless of whether it was independently shown."); *Cuyler,* 446 U.S. at 348, 100 S.Ct. at 1718 ("But unless the trial court fails to afford [ ] an opportunity [to show that potential conflicts imperil his right to a fair trial], a reviewing court cannot presume that the possibility for conflict has resulted in ineffective assistance of counsel."); *see also United States v. Sutton,* 794 F.2d 1415, 1419 (9th Cir.1986) ("Thus, whenever a trial court improperly requires joint representation over timely objection based on possible conflicting interests, prejudice is presumed and reversal is automatic.").

Although Respondent does not raise the issue, we believe it is appropriate to state our conclusion that *Holloway* comports with the Supreme Court's later holding in *Strickland v. Washington,* 466 U.S. 668, 692, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984). In *Strickland,* the Court held that to set aside a judgment based on ineffective assistance of counsel, the defendant must demonstrate prejudice. *See id.* at 668, 104 S.Ct. at 2052. The Court also stated that for purposes of conflict of interest, "[p]rejudice is presumed only if the defendant demonstrates that [ ] 'an actual conflict of interest adversely affected his lawyer's performance.'" 466 U.S. at 692, 104 S.Ct. at 2067 (quoting *Cuyler,* 446 U.S. at 348, 100 S.Ct. at 1718). Despite its restrictiveness, we do not interpret this language as evidencing an intention on the part of the Supreme Court to overrule its earlier pronouncement in *Holloway* that prejudice is presumed without a showing of actual conflict when a defendant makes a timely objection to joint representation and the trial court fails to inquire adequately into the basis of the objection. *Strickland* specifically stated that a "fairly rigid rule of presumed prejudice for conflicts of interest" is reasonable given the obligation of counsel to avoid conflicts and the "ability of trial courts to make early inquiry in certain situations likely to give rise to conflicts." 466 U.S. at 692, 104 S.Ct. at 2067. Thus, *Strickland's* requirement of a showing of actual conflict presupposes that trial courts conduct an appropriate inquiry when the defendant properly raises the issue. *Holloway,* however, addresses the situation where the trial court *fails* to make such inquiry in the face of the defendant's timely objection. As a result, the *Strickland* rule requiring a defendant to demonstrate an actual conflict of interest in order to obtain a presumption of prejudice is inapplicable to a *Holloway*-type case. We therefore conclude the holding in *Holloway*— *i.e.,* that prejudice is presumed when the trial court fails to either appoint separate counsel or make an adequate inquiry, in the face of the defendant's timely objection—satisfies *Strickland's* prejudice requirement without a showing of actual conflict.

Having determined that the district court applied the incorrect legal standard in the instant case, we remand for its reconsideration in light of *Holloway.* On remand, the district court must determine whether: (1) Petitioner's objection at trial to the joint representation was timely, and, if so, (2) whether the trial court took "adequate steps to ascertain whether the risk [of a conflict of

interest] was too remote to warrant separate counsel." *See Holloway*, 435 U.S. at 484, 98 S.Ct. at 1178.

## II.

Petitioner's second ground for relief in his § 2254 petition is that he was placed in double jeopardy by being punished both for felony murder and the underlying felony. The district court agreed that there was a double jeopardy violation, but held that since Petitioner had not raised the issue in his direct appeal or in his first post-conviction proceeding in the Oklahoma courts, he had procedurally defaulted the double jeopardy claim under Oklahoma law and was barred from raising the matter in a federal habeas corpus petition. The federal district court further held that Petitioner did not come within any exception to the procedural default rule and on this basis declined to consider the double jeopardy issue on its merits.

The parties agree that Petitioner was placed in double jeopardy by virtue of being punished for felony murder and the underlying felony. *See Harris v. Oklahoma*, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977) (holding that when one defendant was convicted of felony murder based on his co-defendant's killing of a victim during the course of an armed robbery, the Double Jeopardy Clause of the Fifth Amendment barred a separate prosecution of the defendant for the lesser crime of armed robbery); *Castro v. State*, 745 P.2d 394, 405 (Okla.Crim. App.1987) (holding that the defendant's conviction and punishment for both robbery with a firearm and first degree felony murder, with the robbery serving as the underlying felony, violated the Double Jeopardy Clause of the Fifth Amendment), *cert. denied*, 485 U.S. 971, 108 S.Ct. 1248, 99 L.Ed.2d 446 (1988). The parties also agree that Petitioner procedurally defaulted his double jeopardy claim. However, Respondent argues that Petitioner's default bars him from raising the double jeopardy issue in federal court, while Petitioner argues that he meets one of the exceptions to the procedural default rule in that our failure to consider Petitioner's double jeopardy claim would result in a fundamental miscarriage of justice.

The independent and adequate state ground doctrine bars federal habeas "when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Coleman v. Thompson*, 501 U.S. 722, ——, 111 S.Ct. 2546, 2554, 115 L.Ed.2d 640 (1991). "In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Id.* at ——, 111 S.Ct. at 2565.

In *Kuhlmann v. Wilson*, 477 U.S. 436, 454, 106 S.Ct. 2616, 2627, 91 L.Ed.2d 364 (1986), the Supreme Court held that the fundamental miscarriage of justice exception applies when a prisoner "supplements his constitutional claim with a colorable showing of *factual innocence*." (emphasis added). The fundamental miscarriage of justice exception provides for federal habeas relief where a constitutional violation "has probably resulted in the conviction of one who is *actually innocent*." *Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986) (emphasis added). In *Sawyer v. Whitley*, —— U.S. ——, ——–——, 112 S.Ct. 2514, 2519–20, 120 L.Ed.2d 269 (1992), the Court noted that the exception for actual innocence is narrow, and the concept is "easy to grasp" in the context of a noncapital case. The *Sawyer* Court characterized the prototypical example of actual innocence as the case where "the State has convicted the wrong person of the crime." *Id.* at ——, 112 S.Ct. at 2519. The Court also emphasized that "the miscarriage of justice exception is concerned with actual as compared to legal innocence." *Id.* at ——, 112 S.Ct. at 2519 (citing *Smith v. Murray*, 477 U.S. 527, 537, 106 S.Ct. 2661, 2668, 91 L.Ed.2d 434 (1986)).

In *Steele v. Young*, 11 F.3d 1518, 1522 (10th Cir.1993), we addressed the issue of whether a double jeopardy claim satisfies the fundamental miscarriage of justice exception, and concluded that, standing alone, it does

not. We stated in *Steele* that a double jeopardy claim that is not supplemented by a claim of factual innocence bars federal habeas review. *Id.* We also noted that even if the petitioner prevailed on the merits of his double jeopardy claim he would not show factual innocence; rather, "[d]oing so would show only 'legal innocence' of part of his conviction." *Id.* at 1522 n. 8 (citing *Sawyer*, —— U.S. at ——, 112 S.Ct. at 2519).[4]

In a case strikingly similar to Petitioner's case, the Eighth Circuit concluded that the petitioner's double jeopardy claim was procedurally barred from federal habeas review. *See Wallace v. Lockhart,* 12 F.3d 823, 826–27 (1994). In *Wallace,* the petitioner and a codefendant were convicted in Arkansas state court of felony murder and the underlying felony of kidnapping. *Id.* at 825. In the codefendant's petition for post-conviction relief, an Arkansas court overturned her kidnapping conviction as violative of the Double Jeopardy clause of the Fifth Amendment. *Id.* The petitioner subsequently filed a second petition for post-conviction relief raising the double jeopardy issue. *Id.* The Arkansas courts, however, refused to overturn the petitioner's kidnapping conviction because the petitioner had failed to raise his double jeopardy claim until his second state petition for post-conviction relief. *Id.* The petitioner then sought federal habeas relief claiming, *inter alia,* that despite the procedural bar, the failure of the federal courts to entertain his petition would result in a fundamental miscarriage of justice. *Id.* at 826. The Eighth Circuit disagreed, concluding that because the petitioner did not claim factual innocence of the kidnapping offense, he failed to come within the fundamental miscarriage of justice exception. *Id.* at 827.

■ We conclude Petitioner has failed to demonstrate that our refusal to consider his double jeopardy claim would result in a fundamental miscarriage of justice. Petitioner's

claim is no different from that of the petitioner in *Steele,* and, because a three-judge panel cannot overrule circuit precedent, *see O'Driscoll v. Hercules Inc.,* 12 F.3d 176, 178 n. 1 (10th Cir.1994), we are bound by *Steele.* Like the petitioner in *Steele,* Petitioner claims only that his double jeopardy rights were violated. Although Petitioner's claim that he was placed in double jeopardy by virtue of being punished for felony murder and the underlying felony is meritorious, this shows only legal innocence, which the Supreme Court has held insufficient to establish a fundamental miscarriage of justice. *See Sawyer,* —— U.S. at ——, 112 S.Ct. at 2519. Because Petitioner has failed to supplement his constitutional double jeopardy claim with a claim that he is factually innocent of the underlying armed robbery conviction, federal habeas review of his double jeopardy claim is barred. *See Steele,* 11 F.3d at 1522, 1522 n. 8; *see also Wallace,* 12 F.3d at 826–27.

We also reject Petitioner's characterization of the issue such that because the Fifth Amendment prohibits multiple punishments for the same offense, he is actually innocent of the *sentence* he received for armed robbery.[5] Petitioner cannot show actual innocence of the armed robbery sentence without also claiming actual innocence of the armed robbery itself. Petitioner cites various capital cases and habitual offender cases for the proposition that an individual can be actually innocent of a sentence and thereby come within the fundamental miscarriage of justice exception. *See, e.g., Sawyer,* —— U.S. at ——, 112 S.Ct. at 2519 (exception applies to violations that have resulted in the imposition of death sentence upon one who is actually innocent of the death sentence); *Smith,* 477 U.S. at 537–38, 106 S.Ct. at 2667–68 (same); *Mills v. Jordan,* 979 F.2d 1273, 1279 (7th Cir.1992) (actual innocence exception applies to habitual offender proceedings, whether or not they involve the possibility of capital

---

4. Contrary to the dissent's characterization, we did not simply "refer" to the factual innocence test in *Steele.* Rather, we held that whether or not the petitioner's double jeopardy claim was meritorious, he could not prevail on the claim without making a showing of factual innocence. *See* 11 F.3d at 1522 ("[The petitioner] has not made any showing of or claim that he is factually innocent. *We therefore hold* the double jeopardy

issue procedurally barred from federal habeas review." (emphasis added)).

5. We recognize that Petitioner focuses on "actual innocence of the sentence" due to our framing of the issues when we appointed counsel. *See supra* note 1.

punishment). In both of these types of cases, a petitioner can demonstrate actual innocence of the sentence without showing factual innocence of the underlying conviction because the sentence requires a separate showing from the proof required to convict. *See, e.g., Sawyer,* —— U.S. at ——, 112 S.Ct. at 2520 (under Louisiana law, one convicted of capital murder is not eligible for the death penalty unless the jury concludes that one of a list of statutory aggravating circumstances exists); *Mills,* 979 F.2d at 1279 (under Indiana law, one can be sentenced as an habitual offender if the state proves that he has accumulated two prior unrelated felony convictions). In a capital punishment case, the petitioner is actually innocent of the sentence if he can show factual innocence of the aggravating factors that render one eligible for the death sentence. *Sawyer,* —— U.S. at ——, 112 S.Ct. at 2523. In a habitual offender case, the petitioner is actually innocent of the sentence if he can show he is innocent of the fact—*i.e.,* the prior conviction—necessary to sentence him as an habitual offender. *Mills,* 979 F.2d at 1279. In any event, actual innocence of the sentence still requires a showing of *factual* innocence.

In the instant case, Petitioner is unable to show factual innocence of his armed robbery sentence. Unlike in a capital case or an habitual offender case, Petitioner's conviction and sentence for armed robbery are inextricably intertwined. Once Petitioner was convicted of the armed robbery, he was eligible for the twenty-five year sentence without any showing of proof separate from the showing required to convict him. As a result, Petitioner cannot be actually innocent of the sentence unless he is actually innocent of the armed robbery itself. Because Petitioner makes no showing of actual innocence of the armed robbery, and because his double jeopardy claim merely demonstrates legal, as compared to actual innocence, Petitioner is not entitled to relief on this claim.

We AFFIRM the district court's denial of Petitioner's double jeopardy claim. As to Petitioner's claim of ineffective assistance of counsel, we REVERSE and REMAND for further proceedings consistent with this opinion.

McWILLIAMS, Senior Circuit Judge, dissents.

## I. *Assistance of Counsel*

The Assistance of Counsel issue was not raised in Selsor's direct appeal of his convictions for felony murder and shooting with an intent to kill. *Selsor v. State,* 562 P.2d 926 (Okla.Crim.App.1977). In November, 1978, Selsor filed in the state district court in Tulsa, Oklahoma, an application for post-conviction relief pursuant to Okla.Stat.Ann. tit. 22, § 1080 (effective July 1, 1970). In that application, Selsor claimed that he was denied his Sixth Amendment right to the Assistance of Counsel. So far as I can ascertain, that application is not a part of the record before us.[1] The state district court denied that application. Again, I cannot find the order denying Selsor's application for post-conviction relief in the record before us. The order of the district court was affirmed on appeal by the Oklahoma Court of Criminal Appeals in an unpublished order entered on June 11, 1980. A copy of that order is in the record before us. In that order, the Oklahoma Court of Criminal Appeals affirmed the order of the district court with the statement that "[a]fter careful review of the petition filed herein, we are of the opinion that the issues presented have been litigated previously."

Nine years later, in July, 1989, Selsor filed a second application for post-conviction relief in the state district court in Tulsa, Oklahoma, alleging for the first time his claim of double jeopardy. The state district court denied that application. I do not find Selsor's second application for post-conviction relief or the order of the district court denying that application in the record before us. However, on August 18, 1989, the Oklahoma Court of Criminal Appeals affirmed the district court in an unpublished order, holding that all issues previously ruled upon were *res*

---

1. We are advised that the record of the state court proceedings was damaged, to some degree, as the result of a fire.

*judicata* and all issues not theretofore raised were waived. Okla.Stat.Ann. tit. 22, § 1086 (effective July 1, 1970).

Two years later, on October 21, 1991, Selsor filed his *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (1988) in the United States District Court for the Western District of Oklahoma, naming as respondents Kaiser, as Warden of the institution where Selsor was confined, and the Attorney General of the State of Oklahoma. In his petition, Selsor set forth two grounds for relief.[2]

As his first ground for relief, Selsor alleged as follows:

(A)(1) Ground One: *Petitioner was denied a fair trial in that he was not provided with effective assistance of counsel where there was a conflict of interest with code-fendant's confession* being used as evidence against him in violation of the 5th, 6th, and 14th Amendments to the United States Constitution.

(2) Supporting Facts: (Without citing legal authority or argument state briefly the facts which support your claim)

Before trial and during trial Petitioner moved the trial court to either sever the two co-defendants' cases or to grant outside counsel to one of the two co-defendants. This was necessary because of the conflicting nature of the defenses of each co-defendant and that the interlocking confessions of each of the co-defendants could be used against the other as evidence of guilt without the other co-defendant being allowed to cross-examine.

At trial the confession of the co-defendant was introduced into evidence. This confession stated that the motive for the crime and the actual commission of the crime were perpetrated by the Petitioner. This confession worked very well for the co-defendant as he was acquitted on the murder charge and Petitioner was convicted and sentenced to death, which was modified on appeal.

This joint representation of the Petitioner and co-defendant put the attorney representing them into a position of representing one of the defendant's confessions and not the other. Plus, trying to present to the jury two different defenses of each of the co-defendants. (emphasis Selsor's)

Analyzing "Ground One" of Selsor's § 2254 petition filed in federal district court, Selsor asserts that (1) he was denied a fair trial (2) because he was not provided with effective assistance of counsel (3) since his attorney had a "conflict of interest"; (4) which was the result of the fact that his co-defendant's (Dodson's) confession was going to be used at trial as evidence against him, in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

As a starting point, it is well established that "[r]equiring or permitting a single attorney to represent codefendants, often referred to as joint representation, is not *per se* violative of constitutional guarantees of effective assistance of counsel." *See, e.g., Holloway v. Arkansas*, 435 U.S. 475, 482, 98 S.Ct. 1173, 1177, 55 L.Ed.2d 426 (1978).

In his petition, Selsor bases his claim of ineffective assistance of counsel because of what he characterizes as a conflict of interest solely on the fact that Dodson's confession, which implicated him, was going to be used against him at the state trial. As indicated, both Dodson and Selsor made rather detailed confessions to the authorities in which each detailed his part in the felony murder and in so doing necessarily implicated the other. However, I fail to see just how such demonstrates that counsel had a conflict of interest when he represented both Selsor and Dodson. To me, it is a *non sequitur* in that the conclusion does not follow logically from the premise. When the government's witnesses testified as to the details of Dodson's confession, counsel was free to challenge the confession as it related to both Dodson and Selsor. Likewise when government witnesses testified as to Selsor's confession, counsel

---

**2.** The second ground relates to Selsor's claim of double jeopardy as concerns his sentence for

armed robbery.

was perfectly free to challenge the confession as it related to both Selsor and Dodson.

This is not an instance where a co-defendant's confession implicated a defendant who had not confessed. Hence, *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) is inapplicable.[3] In our case, both Dodson and Selsor confessed in detail, and in the course of their own confession implicated the other. Such, however, does not show that counsel had a "conflict of interest."

Although it is not mentioned in "Ground One," in the "Supporting Facts" paragraph under "Ground One" there is mention of the fact that the two defendants had "conflicting defenses." The petition does not identify the "conflicting defenses," so we are left to speculate as to just what the inconsistent defenses were.

In this Court, counsel suggests that when Dodson at the start of the trial entered an additional plea of not guilty by reason of insanity, the defendants at that point had inconsistent defenses which necessarily created a "conflict of interest." I do not agree. In this regard, counsel had informed the state court that possibly Dodson would testify in his own defense and that his testimony would disadvantage Selsor. However, at trial Dodson did not testify, so the possibility perceived by counsel never materialized. No evidence of any insanity on the part of Dodson was introduced, and the jury was not instructed on the matter. Under such circumstance, the belated entry of a plea of not guilty by reason of insanity by Dodson does not, in my view, show, or even tend to show, a "conflict of interest." Rather, it suggests to me a last minute tactical move by counsel.

In any event, Selsor made no real showing of any "conflict of interest" which would justify the rather sweeping mandate of the majority ordering the federal district court to inquire into matters occurring in the state court over 18 years ago, even predating *Holloway v. Arkansas, supra.*

## II. *Double Jeopardy*

In resolving the double jeopardy issue, the ultimate question is whether requiring a state prisoner to serve a 25-year sentence which violates the double jeopardy clause of the United States Constitution, Amendment V, constitutes a fundamental miscarriage of justice. To me, at least, the answer thereto is rather obvious. In my best judgment, to require Selsor to serve a 25-year sentence which is unconstitutional is a classic example of a miscarriage of justice.

Selsor did not raise his double jeopardy claim in the Oklahoma courts until his second application for state post-conviction relief. The Oklahoma courts refused to consider Selsor's claim of double jeopardy on its merits because it had not previously been raised and was therefore, under Oklahoma law, deemed to have been waived.

In such circumstance, Selsor cannot thereafter raise his double jeopardy claim in a federal habeas corpus proceeding because of his "procedural default" in the Oklahoma courts, unless he can show "cause and prejudice" for his default or "demonstrate that failure to consider the claim[ ] [in our case, a claim of double jeopardy] will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, ——, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991). If he can show either, then he can raise his procedurally defaulted claim.

In the instant case, we are not concerned with the "cause and prejudice" exception to the "procedural default" rule, but we are concerned with the "fundamental miscarriage of justice" exception to that rule. The federal district court, and the majority of the panel, have held that the failure to hear Selsor's double jeopardy claim on its merits does not result in a "fundamental miscarriage of justice." I cannot agree.

In this connection, it should be emphasized that the State of Oklahoma and the federal district court agree that the 25-year sentence imposed on the robbery conviction vio-

---

3. In *Schneble v. Florida*, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972), the Supreme Court held that a violation of the *Bruton* rule was subject to the "harmless beyond a reasonable doubt" exception where there was overwhelming evidence of guilt which included the defendant's own confession.

lates the double jeopardy clause of the United States Constitution since Selsor was also sentenced to life imprisonment on his felony-murder conviction. So, should we get to the merits of Selsor's double jeopardy claim, he would prevail. Hence, the real issue is whether Selsor is barred from raising the double jeopardy issue in federal courts because of his procedural default in Oklahoma courts, or does he come within an exception to that rule?

More specifically: It is my understanding that where a state prisoner challenges his conviction in a federal habeas corpus proceeding on a constitutional ground not raised in state court, he is in procedural default and the federal courts will not consider the petition on its merits, unless there be "cause and prejudice," or the failure to hear the petition on its merits would constitute "a miscarriage of justice." In *Sawyer v. Whitley,* —— U.S. ——, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992), the Supreme Court at ——, 112 S.Ct. at 2519 spoke as follows:

> A prototypical example of "actual innocence" in a colloquial sense is the case where the State has convicted the wrong person of the crime.

However, it is also my understanding that where a state prisoner challenges in a federal habeas corpus proceeding the sentence imposed by a state court on constitutional grounds, which is our case, he need not show actual innocence of the crime in order to come within the "miscarriage of justice" exception to the procedural default rule, and that to come within the exception he need only show that he was "actually innocent" of the sentence imposed.

So, in *Sawyer v. Whitley,* —— U.S. ——, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992), the state prisoner was actually guilty of the crime of murder and did not claim actual innocence of that offense, but the Supreme Court nonetheless went on to consider, and reject, on its merits his claim that there was constitutional error in the sentencing phase of his case which constituted a miscarriage of justice.

In *Smith v. Murray,* 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986), the state prisoner was actually guilty of murder and did not claim actual innocence of that offense, but only complained about constitutional error in his sentencing. In that case, the Supreme Court considered, but rejected on its merits the petitioner's claim that the death sentence constituted a miscarriage of justice.[4]

Juxtaposing *Smith* and *Sawyer,* the Supreme Court in *Sawyer* in defining "actual innocence" in the sentencing phase of a capital case, spoke as follows at p. ——, 112 S.Ct. at p. 2521:

> Considering Louisiana law as an example, then, there are three possible ways in which "actual innocence" might be defined. The strictest definition would be to limit any showing to the elements of the crime which the State has made a capital offense. The showing would have to negate an essential element of that offense. The Solicitor General, filing as *amicus curiae* in support of respondent, urges the Court to adopt this standard. We reject this submission as too narrow, because it is contrary to the statement in *Smith* that the concept of "actual innocence" could be applied to mean "innocent" of the death penalty. 477 U.S., at 537, 106 S.Ct., at 2668. *This statement suggested a more expansive meaning to the term of "actual inno-*

---

4. As indicated, the Supreme Court has considered the "fundamental miscarriage of justice" exception to the "procedural default" rule in capital cases involving both a challenge to the conviction and a challenge only to the sentence. We find nothing in those cases to indicate that the "fundamental miscarriage of justice" exception applies to capital cases only. We perceive no logical reason why the same rule should not apply to non-capital cases. A "fundamental miscarriage of justice" is as likely to occur in a non-capital case as in a capital case. And, though the consequences of a miscarriage of justice in a capital case may be more dire, and permanent, than in a non-capital case, still 25 years imprisonment is not a trifle. For cases considering the "fundamental miscarriage of justice" exception to the "procedural default" rule in non-capital cases, *see Mills v. Jordan,* 979 F.2d 1273, 1279 (7th Cir.1992); *Smith v. Collins,* 977 F.2d 951, 959 (5th Cir.1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 97, 126 L.Ed.2d 64 (1993); and *Jones v. Arkansas,* 929 F.2d 375, 381 (8th Cir.1991).

*cence" in a capital case than simply inno-cence of the capital offense itself.*

(emphasis added).

In *Steele v. Young,* 11 F.3d 1518 (10th Cir.1993), our Court spoke about "factual innocence," but nonetheless went on to consider, and reject on its merits, the petitioner's claim that his sentences violated the double jeopardy clause.[5] So, this Court in *Young,* as the Supreme Court did in *Sawyer* and *Smith,* referred to the "actual innocence" ("factual innocence" in *Young*) test, but nonetheless went on to consider, and reject, on its merits the petitioner's claim that failure to hear his procedurally barred claim would result in a miscarriage of justice. It would seem to me that if the Supreme Court in *Sawyer* and *Smith* had found a miscarriage of justice it would have fashioned some sort of a remedy.

This Court held in *Young* that there was *no* double jeopardy violation, since there were multiple assaults, a holding with which I am in complete accord.[6] However, I would assume that had this Court in *Young* found a double jeopardy violation, it might well have equated such with a miscarriage of justice and fashioned a remedy therefor. Otherwise, why consider the matter?

In any event, in our case all agree that the 25–year sentence on the robbery charge violates the double jeopardy clause, and I still believe that to require Selsor to serve an unconstitutional 25–year sentence is a miscarriage of justice. A 25–year sentence is not *de minimis,* and to hold that Selsor must serve that sentence is, in my view, a "prototypical example" of a miscarriage of justice.

In sum, failure to hear on its merits Selsor's claim of double jeopardy will result in a fundamental miscarriage of justice, and accordingly, Selsor comes within the exception to the procedural default rule. Considering, then, Selsor's claim of double jeopardy on its merits, all agree that the 25–year sentence on the robbery conviction violates the double jeopardy clause of the United States Constitution.

---

**5.** In *Young,* which involved a constitutional challenge to petitioner's sentences, we quoted language from *Herrera v. Collins,* —— U.S. ——, ——, 113 S.Ct. 853, 862, 122 L.Ed.2d 203 (1993), which involved a constitutional challenge to petitioner's conviction, to the effect that "[t]he fundamental miscarriage of justice exception is available 'only where the prisoner *supplements* his constitutional claim with a colorable showing of factual innocence.'" (quoting *Kuhlmann v. Wilson,* 477 U.S. 436, 454, 106 S.Ct. 2616, 2627, 91 L.Ed.2d 364 (1986)) (emphasis added by *Herrera*). *Herrera,* in turn, was based on *Kuhlmann v. Wilson,* 477 U.S. 436, 454, 106 S.Ct. 2616, 2627, 91 L.Ed.2d 364 (1986), where the petitioner had also challenged his conviction on constitutional grounds.

**6.** In *Young,* the petitioner claimed that it was double jeopardy to convict him under Oklahoma's statutes on assault and battery with a dangerous weapon and assault and battery with a deadly weapon with an intent to kill, and then sentence him to separate and consecutive sentences on two convictions. As indicated, we held in *Young* that since there were numerous assaults, not just one, there was no double jeopardy violation. We note that we did not dispose of *Young* on the basis that the "actual innocence of the sentence" concept applies only where a capital offense is involved in the claim of double jeopardy.