Noah **HARJO**, Petitioner,

v.

Dan **REYNOLDS**, Respondent.

No. 93–C–285–K.

United States District Court, N.D. Oklahoma.

July 27, 1995.

See also 797 P.2d 338.

Noah Harjo, McAlester, OK, pro se.

Sandra D. Howard, Atty. Gen., Oklahoma City, OK, for respondent Dan Reynolds, Attorney General of State of Okl.

## *ORDER*

KERN, District Judge.

The only ground for habeas relief remaining in this habeas corpus action is whether Petitioner Noah Harjo was denied the effective assistance of trial counsel due to a conflict of interest as a result of multiple representation. At trial Petitioner and three of his co-defendants were represented by two attorneys from the Tulsa County Public Defender's Office, although defense counsel had objected prior to and at trial to the joint representation due to a possible conflict of interest.

■ When a state prisoner has timely objected to the issue of multiple representation at trial, the trial court has the duty to inquire into the potential conflict of interest under *Holloway v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). *See Selsor v. Kaiser,* 22 F.3d 1029, 1032 (10th Cir.1994); *United States v. Cook,* 45 F.3d 388, 393 (10th Cir.1995). Otherwise, "prejudice to the defendant is presumed." *Selsor,* 22 F.3d at 1033. This Court, therefore, "must determine whether: (1) Petitioner's objection at trial to the joint representation was timely,

and if so (2) whether the trial court took 'adequate steps to ascertain whether the risk [of conflict of interest] was too remote to warrant separate counsel.'" *Id.* at 1033–34. On February 7, 1995, the Court held that defense counsel timely raised the issue of a potential conflict of interest in this case and directed the parties to submit supplemental briefs addressing whether the trial judge sufficiently determined the risk of a potential conflict of interest under *Holloway.* The parties have timely submitted the supplemental briefs and that issue is before the Court for consideration.

## I. BACKGROUND

In 1987, Petitioner Harjo and his co-defendants, Dean Wright and Paula Marie Wright (husband and wife), and Marty Lee Langley (the natural son of Paula Wright) were charged with Murder in the First Degree (Count I) and Conspiracy to commit murder (Count II), in the District Court of Tulsa County, Case No. CRF–87–860.[1] On April 28, 1987, the Public Defender's office sought to withdraw from representation of Petitioner Harjo on the basis of an "irreconcilable conflict of interest which prevents the further representation of said Noah Harjo." (Original Record at 25.)[2] At a motion hearing held on May 6, 1987, trial counsel explained that "Langley and the two Wrights tend to put Mr. Harjo in command of the situation that resulted in the homicide and according to the statement that Mr. Harjo gave to the authorities in this matter, his statement implicates the Wrights and Marty Langley." (May 6, 1987 Motion Hrg. Tr. at 3.) Counsel argued that it would be in the best interest of Mr. Harjo if the court would permit counsel to withdraw from Harjo's case and let him and his co-counsel represent the co-defendants. (*Id.*) The trial court denied counsel's request, finding that while there was a possibility for a conflict of interest, the Court did not have jurisdiction because the defendants had not yet been bound over to the district court for trial. (*Id.* at 3–4.) The Court of

Criminal Appeals denied extraordinary relief. (Original Record at 31–32.)

At a preliminary hearing on May 13, 1987, defense counsel advised the court that they believed a conflict of interest existed between Mr. Harjo and the remaining co-defendants in spite of the court's refusal to assume jurisdiction on the matter. Counsel requested a continuance of the preliminary hearing as to Mr. Harjo and informed the court as follows:

I have had one brief conversation with Mr. Harjo concerning this issue. He has advised me that [he] feels like he should have his own lawyer. And I would like the record to reflect that at preliminary hearing Mr. Harjo is objecting to our representing him, based on that conflict of interest, and request the Court to appoint counsel for him.

(Prelim.Hrg.Tr. at 4–5.) On behalf of Mr. Harjo, counsel further stated as follows:

Your Honor, on behalf of Mr. Harjo, I would represent to the Court that his position is simply that there is such a conflict of interest that he feels he cannot be given a fair hearing even at the preliminary hearing stage and that he is just objecting to the Public Defender representing him in their capacity as counsel for the other defendants as well.

(Prelim.Hrg.Tr. at 6.) The court denied Petitioner's request for a continuance and granted Petitioner an exception to proceeding at the preliminary hearing. After hearing the testimony and evidence, the court ordered the defendants bound over to the district court to stand trial.

On September 15, 1987, defense counsel filed a "motion for severance" which reads in part as follows:

2. The Public Defender would ask that, at the least, the trials of the four co-defendants be severed, to mitigate some of the harm done by being forced to try four co-defendants in one trial. The Court of

---

1. Marty Lee Langley was acquitted on both counts.

2. At the time of trial, 22 O.S. § 1271 authorized appointment and compensation for separate

counsel "[i]f two or more indigent defendants are charged conjointly, and the public defender cannot justly defend both...."

Criminal Appeals has recognized that when trials of co-defendants are severed, a conflict of interest may be avoided. *See Smith v. State,* 727 P.2d 1366 (Okl.Cr. 1986).

3. The Public Defender will have difficulty in representing all four co-defendants at trial because one co-defendant, Noah Harjo, has confessed to police, and his statements may be introduced at trial either to impeach his testimony from the witness stand, or as direct evidence of guilt. Under the Supreme Court's latest ruling on conflict of interest, where one co-defendant's hearsay statements are admitted, severance should be granted. *Cruz v. New York,* 481 U.S. 186, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987).

4. The Public Defender will have to argue in closing argument that one co-defendant, Marty Langley, is less culpable than the other co-defendants, and that the evidence of Langley's guilt is insufficient to convict, based on reviewing evidence presented at preliminary hearing. To make this argument, the Public Defender will have to imply, directly or indirectly, that the other three co-defendants are more culpable. This problem can be avoided by severance of trials.

5. The Public Defender will have to argue that co-defendant Noah Harjo is most culpable, since he confessed to the crime, and that co-defendant Dennis Wright is more culpable than Paula Wright and Marty Langley because Noah Harjo and Dennis Wright have numerous prior convictions, while Paula Wright has no prior convictions. Where one co-defendant has several prior convictions, and other have none, it is likely that the co-defendant with no prior convictions will testify, thus calling attention to the fact that the other co-defendants have not testified. This can prejudice the jury against the non-testifying co-defendant, in violation of their constitutional right to remain silent.

. . . . .

7. Based on the evidence presented at preliminary hearing, some co-defendants are clearly more culpable than others, and it will be difficult to argue to the jury that some co-defendants are innocent and some not as culpable as others, when the same attorney must represent all four co-defendants. Severance would avoid this problem to some extent.

8. The attorney for co-defendants would again request that he be permitted to withdraw from representation of all four co-defendants, but if this court will not grant the motion to withdraw, then the attorney would request a severance of all four co-defendants from each other for trial to mitigate the conflict of interest.

(Original Record at 41–44.)

At a conference out of the presence of the jury on October 5, 1987, the first day of trial, defense counsel re-urged the motion for severance and again pointed out a possible conflict of interest due to multiple representation. The following discussion ensued:

MR. TROY (one of the attorneys from the Public defender's Office): Your Honor, we would at this time make the Motion for Severance based on the enumerated reasons with 9 sub-propositions. Briefly stated, your Honor, we would argue that in order to represent all four co-defendants there exists a real possibility that in closing arguments, for example, we will have to argue the relative culpability of all four co-defendants and that, we believe, could create a conflict sufficient for this Court to grant a severance.

We would also urge to the Court that one co-defendant, Noah Harjo, has confessed to the police and his statement may be introduced at trial. I would advise the Court in all candor that Mr. Gillert has told us he will not use that statement.

THE COURT: Anything further in support of your motion for severance?

MR. TROY: Your Honor, we would also argue that the prior convictions of Noah Harjo, Dennis Wright and Paula Wright would unfairly and certainly prejudice Marty Langley, who has no prior felony convictions.

We would also call to the attention the close relationship of all the parties. This obviously affects any testimony the parties may give. Based on the close relationship,

there could be a possible conflict there and we would also re-urge, Judge, that at the preliminary hearing, based on the evidence at preliminary hearing, certain defendants appear far more culpable and that puts us in a very, very difficult position.

THE COURT: I want the record to reflect this matter has come before the Court before, prior to preliminary hearing. At th[at] time the Court ruled against allowing severance or allowing the Public Defender's Office to withdraw from representing certain defendants because of probability or possibility existed that there might be a conflict.

Here again, the only thing this Court is being told is that there is a possibility that something might exist and I don't feel that it's sufficient, Mr. Troy. I'll give—I'll overrule your motion and give you an exception to the Court's ruling.

(Trial tr. at 6–8.)

## II. ANALYSIS

■ The right to counsel under the Sixth Amendment entails "a correlative right to representation that is free from conflicts of interest." *Wood v. Georgia*, 450 U.S. 261, 271, 101 S.Ct. 1097, 1103, 67 L.Ed.2d 220 (1981). A brief review of Supreme Court jurisprudence in this area is in order. In *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), Glasser and Kretske were charged with conspiracy to defraud the United States. Attorney Stewart represented Glasser and Attorney Harrington represented Kretske. On the first day of trial, Harrington asked for a continuance, which was denied. On the second day of trial, Harrington advised the Court Kretske did not want Harrington representing him. The trial court asked Stewart if he would act as Kretske's attorney. Defendant Glasser objected. Stewart pointed out the two defendants had possible inconsistent defenses and noted the possible introduction of evidence regarding conversations which only involved Kretske. Ultimately, apparently believing he was obeying the trial court's directive, Stewart accepted the appointment. Both defendants were convicted.

The Supreme Court held it was clear the assistance of counsel guaranteed by the Sixth Amendment "contemplates that such assistance be untrammeled and unimpaired by a court order requiring that one lawyer shall simultaneously represent conflicting interests. If the right to the assistance of counsel means less than this, a valued constitutional safeguard is substantially impaired." *Id.* at 70, 62 S.Ct. at 465. The Court went on to instruct that "[t]he trial court should protect the right of an accused to have the assistance of counsel." *Id.* at 71, 62 S.Ct. at 465. The Court concluded, from examination of the trial record, "Stewart's representation of Glasser was not as effective as it might have been if the appointment had not been made." *Id.* at 76, 62 S.Ct. at 468. Glasser's conviction was reversed.

In *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), the Supreme Court made apparent a trial judge's solemn duty to insure that each defendant is given effective assistance of counsel. In *Holloway*, the lawyer for three defendants moved for appointment of separate counsel for each defendant. Counsel represented that the defendants had stated to him there was a possibility of conflict of interest. The trial court held a hearing and denied the motion. Counsel subsequently renewed the motion, arguing one or two of the defendants might testify and, if they did, counsel would not be able to cross-examine them because counsel had received confidential information. The motion was again abruptly denied. On the second day of trial, after the prosecution had rested, counsel advised the trial court that, against counsel's recommendation, all three defendants had decided to testify. The trial court denied a renewed objection based upon inability to cross-examine. The defendants were convicted; the Supreme Court reversed.

The Court said while "[r]equiring or permitting a single attorney to represent codefendants, often referred to as joint representation, is not *per se* violative of constitutional guarantees of effective assistance of counsel," *id.* at 482, 98 S.Ct. at 1177, once an attorney indicates to the trial court a possible conflict of interest exists, the trial court is obligated

to either appoint separate counsel or to take adequate steps to ascertain whether the risk was too remote to warrant separate counsel. *Id.* at 484, 98 S.Ct. at 1178. The Supreme Court found the trial judge had done neither. The court in *Holloway* stated "[w]e read the Court's opinion in *Glasser,* however, as holding that whenever a trial court improperly requires joint representation over timely objection reversal is automatic." 435 U.S. at 488, 98 S.Ct. at 1181.

Obviously, this Court's task is to determine whether the trial court took "adequate steps", and whether the requirement of joint representation was "improper". The Supreme Court has not yet defined what constitute "adequate steps" for a trial court's inquiry to pass muster. The *Holloway* court gave a strong indication of proper interpretation in the following passage: "Additionally, since the decision in *Glasser,* most courts have held that an attorney's request for the appointment of separate counsel, based on his representations as an officer of the court regarding a conflict of interests, should be granted." 435 U.S. at 485, 98 S.Ct. at 1173. The Supreme Court went on to say it found the considerations cited by such courts "persuasive". *Id.* at 486, 98 S.Ct. at 1179. Among those, the Court specifically mentioned "an 'attorney representing two defendants in a criminal matter is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of a trial.'" *Id.* at 485, 98 S.Ct. at 1173 (quoting *State v. Davis,* 110 Ariz. 29, 514 P.2d 1025, 1027 (1973)).

The *Holloway* court denied the suggestion it was transferring to defense counsel the authority of the trial judge to rule on the existence or risk of a conflict and to appoint separate counsel. It said "our holding does not preclude a trial court from exploring the adequacy of the basis for defense counsel's representations regarding a conflict of interests without improperly requiring disclosure of the confidential communications of the

client." *Id.* at 487, 98 S.Ct. at 1180. The Court also noted the trial court could discipline counsel who presented such motions for dilatory purposes.

Finally, the Supreme Court revisited the issue in *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). Sullivan and two others were charged with murder. Two attorneys represented all three defendants. Sullivan did not object to the joint representation. Sullivan was convicted; the other two defendants were acquitted at separate trials. Referring to *Holloway,* the Court in *Cuyler* said "[s]ince a possible conflict inheres in almost every instance of multiple representation, a defendant who objects to multiple representation must have the opportunity to show that potential conflicts impermissibly imperil his right to a fair trial." *Id.* at 348, 100 S.Ct. at 1718. Sullivan had raised no such objection. "In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Id.*

█ In the instant case, the Petitioner timely objected to joint representation. Accordingly, *Holloway* is controlling and *Cuyler* is inapplicable. *Selsor v. Kaiser,* 22 F.3d 1029, 1032 (10th Cir.1994).[3] Defense counsel presented to the trial judge the basis for the asserted conflict of interest in his motions to withdraw and for severance, the trial court denied the motions after the brief discussion previously quoted. Although this is not a case in which the trial judge "'turn[ed] a blind eye' to an obvious possible conflict," *Cook,* 45 F.3d 388, 394 (quoting *United States v. Levy,* 25 F.3d 146, 154 (2d Cir. 1994)), the adequacy of inquiry is subject to review. Defense counsel clearly presented relative culpability as a potential issue, with reference to statements already made by the defendants. Where there are markedly different degrees of relative culpability between defendants, a likelihood of conflict of interest

---

**3.** The Court notes one of Mr. Harjo's codefendants, Dennis Dean Wright, raised this same issue some years ago. The United States Court of Appeals for the Tenth Circuit, in an unpublished Order and Judgment, affirmed the district court's denial of habeas relief. *Wright v. Kaiser,* No. 91–5059 (Sept. 9, 1991). In so doing, the appellate court relied upon *Cuyler*'s "actual conflict" standard. That ruling appears to conflict with *Selsor v. Kaiser,* a more recent pronouncement.

may exist. *Parker v. Parratt,* 662 F.2d 479, 484 (8th Cir.1981), *cert. denied,* 459 U.S. 846, 103 S.Ct. 102, 74 L.Ed.2d 91 (1982).[4]

Here, the trial judge did not consider the motion on its merits until the day of trial, immediately prior to jury selection. The trial judge did not inquire whether the other codefendants intended to testify and portray Harjo as "the one in command of the situation." If the other defendants did not intend to take the stand, the problem of "relative culpability" was much diminished. Also, the trial judge did not address the defendants personally and inquire as to their reasons for desiring separate counsel. Such an inquiry might well have revealed if the request was dilatory or had merit. The trial judge made little attempt to verify independently whether the conflict of interest warranted the appointment of separate counsel. This Court concludes the trial court did not take the "adequate steps" required by *Holloway.*[5] *Cf. Hernandez v. Mondragon,* 824 F.2d 825, 826–27 (10th Cir.1987) (where trial judge held a "hearing" in chambers with defense counsel, prosecutor, and the defendant).

This case presents a situation similar to the one encountered by the Eleventh Circuit Court of Appeals in *Hamilton v. Ford,* 969 F.2d 1006 (11th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1625, 123 L.Ed.2d 183 (1993). In *Hamilton,* the Eleventh Circuit found that the trial court failed to discharge its duty under *Holloway* to inquire adequately into the basis of the objection to joint representation. *Hamilton,* 969 F.2d at 1011. In reviewing the trial court's responsibility,

the Eleventh Circuit found that "the reading of [the] file for an unrelated purpose is inadequate exploration of the possibility of conflict." *Id.* at 1012. Here, the trial court listened to defense counsel's oral presentation on the day of trial, but did not address the issues previously raised by written motion and oral argument. The trial court appeared to indicate the request for severance or separate counsel had previously been denied prior to the preliminary hearing. (Trial Tr. at 7). In fact, the court's ruling had been that it did not have jurisdiction to rule on such a motion until the defendants were bound over for trial. If the trial court was under the mistaken impression the motion had already been once denied, the thoroughness of his inquiry in the few minutes before jury selection may have suffered.

■ On the record presented, this Court is not persuaded the trial court took adequate steps to ascertain whether the risk was too remote to warrant separate counsel. Obviously, a trial court cannot simply hold a colloquy concerning a potential conflict, deny the request with conclusory language, and thereby render the decision impregnable against habeas review. A trial court's own conclusion that a risk of conflict is too remote may or may not survive scrutiny. Under *Holloway,* this Court must interpret in tandem two related principles. Did the trial court take adequate steps in making its inquiry and was the decision to require joint representation proper? The more hazardous a potential conflict, the more rigorous the trial court's inquiry must be.[6]

---

4. It was made obvious to the trial court this was not a case falling within Justice Frankfurter's description: "Joint representation is a means of insuring against reciprocal recrimination. A common defense often gives strength against a common attack." *Glasser,* 315 U.S. at 92, 62 S.Ct. at 475 (dissenting opinion).

5. Petitioner relies on *United States v. Donahue,* 560 F.2d 1039 (1977), and *United States v. Foster,* 469 F.2d 1, 4–5 (1972), for the proposition that the trial court had a duty to ensure that each defendant was fully aware of the advantages and disadvantages of multiple representation by a single attorney. Those cases, however, precede the Supreme Court's decision in *Holloway* and focus on a federal district court's independent duty to advise a defendant of his right to separate counsel. *See* Fed.R.Crim.P. 44(c); *see also Unit-*

ed *States v. Martin,* 965 F.2d 839, 843 (10th Cir.1992); *United States v. Burney,* 756 F.2d 787, 789 (10th Cir.1985).

6. The record indicates that, in fact, none of the defendants testified at the trial. However, defense counsel did present a closing argument regarding the lesser culpability of Marty Langley, who was acquitted. In any event, the *Holloway* test is clearly not one to be applied in hindsight. Defense counsel may have altered their strategy based upon the trial court's denial of the motions for separate counsel and severance. The Supreme Court noted in *Holloway* "in a case of joint representation of conflicting interests the evil—it bears repeating—is in what the advocate finds himself compelled to *refrain* from doing...." 435 U.S. at 490, 98 S.Ct. at 1182 (emphasis in original).

In the supplemental response, Respondent attempts to shift the burden from the trial judge to defense counsel. Respondent argues that defense counsel, and not the trial judge, had the burden of establishing that the conflict of interest was more than a potential conflict of interest. This Court does not agree. Whether defense counsel presented a true conflict of interest situation to the trial court is not the issue in this habeas action, as indicated in *Holloway*. In light of the attorney's duty to protect the confidentiality of his attorney-client relationship, counsel need not fully explain the matter to the court but merely make the matter known to the court. In the instant case, defense counsel informed the trial judge on at least two different occasions of a potential conflict of interest and explained the basis for his concern. The trial court, however, denied the motions without fully exploring the basis for counsel's representation as to the presence of a conflict of interest. This Court does not see how defense counsel could have further placed the trial judge on notice.

The trial court's statement that he saw only a "possibility" of conflict, whether intentionally or not, evokes the statement in *Cuyler* that "the possibility of conflict is insufficient to impugn a criminal conviction." 446 U.S. at 350, 100 S.Ct. at 1719. In affirming the convictions on direct appeal, the Oklahoma Court of Criminal Appeals cited the same passage. *Harjo v. State*, 797 P.2d 338, 342 (Okla.Crim.App.1990).[7] It is now clear this statement in *Cuyler*, like the "actual conflict" standard it establishes, refers to cases in which a defendant fails to make a timely conflict objection. *See United States v. Cook*, 45 F.3d 388, 393 (10th Cir.1995).

Accordingly, the Court concludes that the trial judge failed to comply with the dictates of *Holloway* by "'insisting ... that counsel undertake to concurrently represent interests which might diverge from those of his [other three] client[s], when the possibility of that divergence is brought home to the court.'" *Holloway*, 435 U.S. at 485, 98 S.Ct. at 1173 (emphasis in original) (quoting *Glas-*

ser v. United States*, 315 U.S. 60, 76, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1941)). As a result, Petitioner was "deprived of his Sixth Amendment right to conflict-free assistance of counsel" at trial. *Cook*, 45 F.3d at 394; *see Selsor*, 22 F.3d at 1033 ("[u]nder the *Holloway* standard, the trial court's failure to appoint separate counsel, or adequately inquire into the possibility of conflict, in the face of a timely objection by defense counsel, demonstrates ineffective assistance of counsel without a showing of actual conflict of interest"). *See also United States v. Sutton*, 794 F.2d 1415, 1419 (9th Cir.1986) ("Thus, whenever a trial court improperly requires joint representation over timely objection based on possible conflicting interests, prejudice is presumed and reversal is automatic").

### III. CONCLUSION

Accordingly, the petition for a writ of habeas corpus is **conditionally granted.** The writ shall issue unless, within one hundred twenty (120) days from the date of entry of this order, the State has commenced proceedings to retry Petitioner.

SO ORDERED.

---

**7.** In a more recent decision, the same court applied *Holloway* in concluding a defendant was deprived of his right to effective assistance of counsel where a single public defender repre-

sented three codefendants who timely objected to the joint representation. *Ross v. State*, 829 P.2d 58 (Okla.Crim.App.1992).